# COMMISSIONER OF INTERNAL REVENUE *v.* LUNDY

No. 94–1785.  Argued November 6, 1995—Decided January 17, 1996

O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and SCALIA, KENNEDY, SOUTER, GINSBURG, and BREYER, JJ., joined. STEVENS, J., filed a dissenting opinion, *post*, p. 253. THOMAS, J., filed a dissenting opinion, in which STEVENS, J., joined, *post*, p. 253.

*Kent L. Jones* argued the cause for petitioner. With him on the briefs were *Solicitor General Days, Assistant Attorney General Argrett, Deputy Solicitor General Wallace, Richard Farber,* and *Regina S. Moriarty.*

*Glenn P. Schwartz* argued the cause for respondent. With him on the brief was *Lawrence J. Ross.**

---

*\*David M. Kirsch, pro se,* filed a brief as *amicus curiae* urging affirmance.

JUSTICE O'CONNOR delivered the opinion of the Court.

In this case, we consider the "look-back" period for obtaining a refund of overpaid taxes in the United States Tax Court under 26 U. S. C. § 6512(b)(3)(B), and decide whether the Tax Court can award a refund of taxes paid more than two years prior to the date on which the Commissioner of Internal Revenue mailed the taxpayer a notice of deficiency, when, on the date the notice of deficiency was mailed, the taxpayer had not yet filed a return. We hold that in these circumstances the 2-year look-back period set forth in § 6512(b)(3)(B) applies, and the Tax Court lacks jurisdiction to award a refund.

I

During 1987, respondent Robert F. Lundy and his wife had $10,131 in federal income taxes withheld from their wages. This amount was substantially more than the $6,594 the Lundys actually owed in taxes for that year, but the Lundys did not file their 1987 tax return when it was due, nor did they file a return or claim a refund of the overpaid taxes in the succeeding 2½ years. On September 26, 1990, the Commissioner of Internal Revenue mailed Lundy a notice of deficiency, informing him that he owed $7,672 in additional taxes and interest for 1987 and that he was liable for substantial penalties for delinquent filing and negligent underpayment of taxes. See 26 U. S. C. §§ 6651(a)(1) and 6653(1).

Lundy and his wife mailed their joint tax return for 1987 to the Internal Revenue Service (IRS) on December 22, 1990. This return indicated that the Lundys had overpaid their income taxes for 1987 by $3,537 and claimed a refund in that amount. Six days after the return was mailed, Lundy filed a timely petition in the Tax Court seeking a redetermination of the claimed deficiency and a refund of the couple's overpaid taxes. The Commissioner filed an answer generally denying the allegations in Lundy's petition. Thereafter, the parties negotiated towards a settlement of the claimed deficiency and refund claim. On March 17, 1992, the Commis-

sioner filed an amended answer acknowledging that Lundy had filed a tax return and that Lundy claimed to have overpaid his 1987 taxes by $3,537.

The Commissioner contended in this amended pleading that the Tax Court lacked jurisdiction to award Lundy a refund. The Commissioner argued that if a taxpayer does not file a tax return before the IRS mails the taxpayer a notice of deficiency, the Tax Court can only award the taxpayer a refund of taxes paid within two years prior to the date the notice of deficiency was mailed. See 26 U. S. C. § 6512(b)(3)(B). Under the Commissioner's interpretation of § 6512(b)(3)(B), the Tax Court lacked jurisdiction to award Lundy a refund because Lundy's withheld taxes were deemed paid on the date that his 1987 tax return was due (April 15, 1988), see § 6513(b)(1), which is more than two years before the date the notice was mailed (September 26, 1990).

The Tax Court agreed with the position taken by the Commissioner and denied Lundy's refund claim. Citing an unbroken line of Tax Court cases adopting a similar interpretation of § 6512(b)(3)(B), e. g., *Allen* v. *Commissioner*, 99 T. C. 475, 479–480 (1992); *Galuska* v. *Commissioner*, 98 T. C. 661, 665 (1992); *Berry* v. *Commissioner*, 97 T. C. 339, 344–345 (1991); *White* v. *Commissioner*, 72 T. C. 1126, 1131–1133 (1979) (renumbered statute); *Hosking* v. *Commissioner*, 62 T. C. 635, 642–643 (1974) (renumbered statute), the Tax Court held that if a taxpayer has not filed a tax return by the time the notice of deficiency is mailed, and the notice is mailed more than two years after the date on which the taxes are paid, the look-back period under § 6512(b)(3)(B) is two years and the Tax Court lacks jurisdiction to award a refund. 65 TCM 3011, 3014–3015 (1993), ¶ 93,278 RIA Memo TC.

The Court of Appeals for the Fourth Circuit reversed, finding that the applicable look-back period in these circumstances is three years and that the Tax Court had juris-

diction to award Lundy a refund. 45 F. 3d 856, 861 (1995). Every other Court of Appeals to have addressed the question has affirmed the Tax Court's interpretation of § 6512(b)(3)(B). See *Davison* v. *Commissioner*, 9 F. 3d 1538 (CA2 1993) (judgt. order); *Allen* v. *Commissioner*, 23 F. 3d 406 (CA6 1994) (judgt. order); *Galuska* v. *Commissioner*, 5 F. 3d 195, 196 (CA7 1993); *Richards* v. *Commissioner*, 37 F. 3d 587, 589 (CA10 1994); see also *Rossman* v. *Commissioner*, 46 F. 3d 1144 (CA9 1995) (judgt. order) (aff'g on other grounds). We granted certiorari to resolve the conflict, 515 U. S. 1102 (1995), and now reverse.

## II

A taxpayer seeking a refund of overpaid taxes ordinarily must file a timely claim for a refund with the IRS under 26 U. S. C. § 6511.[1] That section contains two separate provi-

---

[1] In relevant part, § 6511 provides:

"(a) Period of limitation on filing claim

"Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid.

"(b) Limitation on allowance of credits and refunds

"(1) Filing of claim within prescribed period

"No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period.

"(2) Limit on amount of credit or refund

"(A) Limit where claim filed within 3-year period

"If the claim was filed by the taxpayer during the 3-year period prescribed in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of

sions for determining the timeliness of a refund claim. It first establishes a *filing deadline:* The taxpayer must file a claim for a refund "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid." § 6511(b)(1) (incorporating by reference § 6511(a)). It also defines two *"look-back" periods:* If the claim is filed "within 3 years from the time the return was filed," *ibid.,* then the taxpayer is entitled to a refund of "the portion of the tax paid within the 3 years immediately preceding the filing of the claim." § 6511(b)(2)(A) (incorporating by reference § 6511(a)). If the claim is not filed within that 3-year period, then the taxpayer is entitled to a refund of only that "portion of the tax paid during the 2 years immediately preceding the filing of the claim." § 6511(b)(2)(B) (incorporating by reference § 6511(a)).

Unlike the provisions governing refund suits in United States District Court or the United States Court of Federal Claims, which make timely filing of a refund claim a jurisdictional prerequisite to bringing suit, see 26 U. S. C. § 7422(a); *Martin* v. *United States,* 833 F. 2d 655, 658–659 (CA7 1987), the restrictions governing the Tax Court's authority to award a refund of overpaid taxes incorporate only the lookback period and not the filing deadline from § 6511. See 26

---

time for filing the return. If the tax was required to be paid by means of a stamp, the amount of the credit or refund shall not exceed the portion of the tax paid within the 3 years immediately preceding the filing of the claim.

"(B) Limit where claim not filed within 3-year period

"If the claim was not filed within such 3-year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim.

"(C) Limit if no claim filed

"If no claim was filed, the credit or refund shall not exceed the amount which would be allowable under subparagraph (A) or (B), as the case may be, if claim was filed on the date the credit or refund is allowed."

U. S. C. § 6512(b)(3).[2]  Consequently, a taxpayer who seeks a refund in the Tax Court, like respondent, does not need to actually file a claim for refund with the IRS; the taxpayer need only show that the tax to be refunded was paid during the applicable look-back period.

In this case, the applicable look-back period is set forth in § 6512(b)(3)(B), which provides that the Tax Court cannot award a refund of any overpaid taxes unless it first determines that the taxes were paid:

>    "within the period which would be applicable under section 6511(b)(2) . . . if on the date of the mailing of the

---

[2] In relevant part, § 6512(b) provides:

"(1) Jurisdiction to determine

"Except as provided by paragraph (3) and by section 7463, if the Tax Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment of income tax for the same taxable year . . . in respect of which the Secretary determined the deficiency, or finds that there is a deficiency but that the taxpayer has made an overpayment of such tax, the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer.

.          .          .          .          .

"(3) Limit on amount of credit or refund

"No such credit or refund shall be allowed or made of any portion of the tax unless the Tax Court determines as part of its decision that such portion was paid—

"(A) after the mailing of the notice of deficiency,

"(B) within the period which would be applicable under section 6511(b)(2), (c), or (d), if on the date of the mailing of the notice of deficiency a claim had been filed (whether or not filed) stating the grounds upon which the Tax Court finds that there is an overpayment, or

"(C) within the period which would be applicable under section 6511(b)(2), (c), or (d), in respect of any claim for refund filed within the applicable period specified in section 6511 and before the date of the mailing of the notice of deficiency—

"(i) which had not been disallowed before that date,

"(ii) which had been disallowed before that date and in respect of which a timely suit for refund could have been commenced as of that date, or

"(iii) in respect of which a suit for refund had been commenced before that date and within the period specified in section 6532."

notice of deficiency a claim had been filed (whether or not filed) stating the grounds upon which the Tax Court finds that there is an overpayment."

The analysis dictated by § 6512(b)(3)(B) is not elegant, but it is straightforward. Though some courts have adverted to the filing of a "deemed claim," see *Galuska*, 5 F. 3d, at 196; *Richards*, 37 F. 3d, at 589, all that matters for the proper application of § 6512(b)(3)(B) is that the "claim" contemplated in that section be treated as the only mechanism for determining whether a taxpayer can recover a refund. Section 6512(b)(3)(B) defines the look-back period that applies in Tax Court by incorporating the look-back provisions from § 6511(b)(2), and directs the Tax Court to determine the applicable period by inquiring into the timeliness of a hypothetical claim for refund filed "on the date of the mailing of the notice of deficiency."

To this end, § 6512(b)(3)(B) directs the Tax Court's attention to § 6511(b)(2), which in turn instructs the court to apply either a 3-year or a 2-year look-back period. See §§ 6511(b)(2)(A) and (B) (incorporating by reference § 6511(a)); see *supra*, at 240. To decide which of these look-back periods to apply, the Tax Court must consult the filing provisions of § 6511(a) and ask whether the claim described by § 6512(b)(3)(B)—a claim filed "on the date of the mailing of the notice of deficiency"—would be filed "within 3 years from the time the return was filed." See § 6511(b)(2)(A) (incorporating by reference § 6511(a)). If a claim filed on the date of the mailing of the notice of deficiency would be filed within that 3-year period, then the look-back period is also three years and the Tax Court has jurisdiction to award a refund of any taxes paid within three years prior to the date of the mailing of the notice of deficiency. §§ 6511(b)(2)(A) and 6512(b)(3)(B). If the claim would not be filed within that 3-year period, then the period for awarding a refund is only two years. §§ 6511(b)(2)(B) and 6512(b)(3)(B).

In this case, we must determine which of these two look-back periods to apply when the taxpayer fails to file a tax return when it is due, and the Commissioner mails the taxpayer a notice of deficiency before the taxpayer gets around to filing a late return. The Fourth Circuit held that a taxpayer in this situation is entitled to a 3-year look-back period if the taxpayer actually files a timely claim at some point in the litigation, see *infra*, at 246, and respondent offers additional reasons for applying a 3-year look-back period, see *infra*, at 249–252. We think the proper application of § 6512(b)(3)(B) instead requires that a 2-year look-back period be applied.

We reach this conclusion by following the instructions set out in § 6512(b)(3)(B). The operative question is whether a claim filed "on the date of the mailing of the notice of deficiency" would be filed "within 3 years from the time the return was filed." See § 6512(b)(3)(B) (incorporating §§ 6511(b)(2) and 6511(a)). In the case of a taxpayer who does not file a return before the notice of deficiency is mailed, the claim described in § 6512(b)(3)(B) could not be filed "within 3 years from the time the return was filed." No return having been filed, there is no date from which to measure the 3-year filing period described in § 6511(a). Consequently, the claim contemplated in § 6512(b)(3)(B) would not be filed within the 3-year window described in § 6511(a), and the 3-year look-back period set out in § 6511(b)(2)(A) would not apply. The applicable look-back period is instead the default 2-year period described in § 6511(b)(2)(B), which is measured from the date of the mailing of the notice of deficiency, see § 6512(b)(3)(B). The taxpayer is entitled to a refund of any taxes paid within two years prior to the date of the mailing of the notice of deficiency.

Special rules might apply in some cases, see, *e. g.*, § 6511(c) (extension of time by agreement); § 6511(d) (special limita-

tions periods for designated items), but in the case where the taxpayer has filed a timely tax return and the IRS is claiming a deficiency in taxes from that return, the interplay of §§ 6512(b)(3)(B) and 6511(b)(2) generally ensures that the taxpayer can obtain a refund of any taxes against which the IRS is asserting a deficiency. In most cases, the notice of deficiency must be mailed within three years from the date the tax return is filed. See 26 U. S. C. §§ 6501(a) and 6503(a)(1); *Badaracco* v. *Commissioner*, 464 U. S. 386, 389, 392 (1984). Therefore, if the taxpayer has already filed a return (albeit perhaps a faulty one), any claim filed "on the date of the mailing of the notice of deficiency" would necessarily be filed within three years from the date the return is filed. In these circumstances, the applicable look-back period under § 6512(b)(3)(B) would be the 3-year period defined in § 6511(b)(2)(A), and the Tax Court would have jurisdiction to award a refund.

Therefore, in the case of a taxpayer who files a timely tax return, § 6512(b)(3)(B) usually operates to toll the filing period that might otherwise deprive the taxpayer of the opportunity to seek a refund. If a taxpayer contesting the accuracy of a previously filed tax return in Tax Court discovers for the first time during the course of litigation that he is entitled to a refund, the taxpayer can obtain a refund from the Tax Court without first filing a timely claim for refund with the IRS. It does not matter, as it would in district court, see § 7422 (incorporating § 6511), that the taxpayer has discovered the entitlement to a refund well after the period for filing a timely refund claim with the IRS has passed, because § 6512(b)(3)(B) applies "whether or not [a claim is] filed," and the look-back period is measured from the date of the mailing of the notice of deficiency. *Ibid.* Nor does it matter, as it might in a refund suit, see 26 CFR § 301.6402–2(b)(1) (1995), whether the taxpayer has previously apprised the IRS of the precise basis for the refund claim, because 26 U. S. C. § 6512(b)(3)(B) posits the filing of a hypothetical claim

"stating the grounds upon which the Tax Court finds that there is an overpayment."

Section 6512(b)(3)(B) treats delinquent filers of income tax returns less charitably. Whereas timely filers are virtually assured the opportunity to seek a refund in the event they are drawn into Tax Court litigation, a delinquent filer's entitlement to a refund in Tax Court depends on the date of the mailing of the notice of deficiency. Section 6512(b)(3)(B) tolls the limitations period, in that it directs the Tax Court to measure the look-back period from the date on which the notice of deficiency is mailed and not the date on which the taxpayer actually files a claim for refund. But in the case of delinquent filers, § 6512(b)(3)(B) establishes only a 2-year look-back period, so the delinquent filer is not assured the opportunity to seek a refund in Tax Court: If the notice of deficiency is mailed more than two years after the taxes were paid, the Tax Court lacks jurisdiction to award the taxpayer a refund.

The Tax Court properly applied this 2-year look-back period to Lundy's case. As of September 26, 1990 (the date the notice was mailed), Lundy had not filed a tax return. Consequently, a claim filed on that date would not be filed within the 3-year period described in § 6511(a), and the 2-year period from § 6511(b)(2)(B) applies. Lundy's taxes were withheld from his wages, so they are deemed paid on the date his 1987 tax return was due (April 15, 1988), see § 6513(b)(1), which is more than two years prior to the date the notice of deficiency was mailed (September 26, 1990). Lundy is therefore seeking a refund of taxes paid outside the applicable look-back period, and the Tax Court lacks jurisdiction to award such a refund.

## III

In deciding Lundy's case, the Fourth Circuit adopted a different approach to interpreting § 6512(b)(3)(B) and applied a 3-year look-back period. Respondent supports the Fourth

Circuit's rationale, but also offers an argument for applying a uniform 3-year look-back period under § 6512(b)(3)(B). We find neither position persuasive.

The Fourth Circuit held:

> "[T]he Tax Court, when applying the limitation provision of § 6511(b)(2) in light of § 6512(b)(3)(B), should substitute the date of the mailing of the notice of deficiency for the date on which the taxpayer filed the claim for refund, but only for the purpose of determining the benchmark date for measuring the limitation period and not for the purpose of determining whether the two-year or three-year limitation period applies." 45 F. 3d, at 861.

In other words, the Fourth Circuit held that the look-back period is *measured* from the date of the mailing of the notice of deficiency (*i. e.*, the taxpayer is entitled to a refund of any taxes paid within either two or three years prior to that date), but that that date is irrelevant in calculating the *length* of the look-back period itself. The look-back period, the Fourth Circuit held, must be defined in terms of the date that the taxpayer *actually filed* a claim for refund. *Ibid.* ("[T]he three-year limitation period applies because Lundy filed his claim for refund . . . within three years of filing his tax return"). Thus, under the Fourth Circuit's view, Lundy was entitled to a 3-year look-back period because Lundy's late-filed 1987 tax return contained a claim for refund, and that claim was filed within three years from the filing of the return. *Ibid.* (taxpayer entitled to same look-back period that would apply in district court).

Contrary to the Fourth Circuit's interpretation, the fact that Lundy actually filed a claim for a refund after the date on which the Commissioner mailed the notice of deficiency has no bearing in determining whether the Tax Court has jurisdiction to award Lundy a refund. See *supra*, at 240–241. Once a taxpayer files a petition with the Tax Court,

the Tax Court has exclusive jurisdiction to determine the existence of a deficiency or to award a refund, see 26 U. S. C. § 6512(a), and the Tax Court's jurisdiction to award a refund is limited to those circumstances delineated in § 6512(b)(3). Section 6512(b)(3)(C) is the only provision that measures the look-back period based on a refund claim that is actually filed by the taxpayer, and that provision is inapplicable here because it only applies to refund claims filed "before the date of the mailing of the notice of deficiency." § 6512(b)(3)(C). Under § 6512(b)(3)(B), which is the provision that does apply, the Tax Court is instructed to consider only the timeliness of a claim filed "on the date of the mailing of the notice of deficiency," not the timeliness of any claim that the taxpayer might actually file.

The Fourth Circuit's rule also leads to a result that Congress could not have intended, in that it subjects the timely, not the delinquent, filer to a shorter limitations period in Tax Court. Under the Fourth Circuit's rule, the availability of a refund turns entirely on whether the taxpayer has in fact filed a claim for refund with the IRS, because it is the date of *actual filing* that determines the applicable look-back period under § 6511(b)(2) (and, by incorporation, § 6512(b)(3)(B)). See 45 F. 3d, at 861; *supra*, at 246. This rule might "eliminat[e] the inequities resulting" from adhering to the 2-year look-back period, 45 F. 3d, at 863, but it creates an even greater inequity in the case of a taxpayer who dutifully files a tax return when it is due, but does not initially claim a refund. We think our interpretation of the statute achieves an appropriate and reasonable result in this case: The taxpayer who files a timely income tax return could obtain a refund in the Tax Court under § 6512(b)(3)(B), without regard to whether the taxpayer has actually filed a timely claim for refund. See *supra*, at 244–245.

If it is the actual filing of a refund claim that determines the length of the look-back period, as the Fourth Circuit held, the filer of a timely income tax return might be out of

luck. If the taxpayer does not file a claim for refund with his tax return, and the notice of deficiency arrives shortly before the 3-year period for filing a timely claim expires, see §§ 6511(a) and (b)(1), the taxpayer might not discover his entitlement to a refund until well after the commencement of litigation in the Tax Court. But having filed a timely return, the taxpayer would be precluded by the passage of time from filing an actual claim for refund "within 3 years from the time the return was filed," as § 6511(b)(2)(A) requires. § 6511(b)(2)(A) (incorporating by reference § 6511(a)). The taxpayer would therefore be entitled only to a refund of taxes paid within two years prior to the mailing of the notice of deficiency. See § 6511(b)(2)(B); 45 F. 3d, at 861–862 (taxpayer entitled to same look-back period as would apply in district court, and look-back period is determined based on date of actual filing). It is unlikely that Congress intended for a taxpayer in Tax Court to be worse off for having filed a timely return, but that result would be compelled under the Fourth Circuit's approach.

Lundy offers an alternative reading of the statute that avoids this unreasonable result, but Lundy's approach is similarly defective. The main thrust of Lundy's argument is that the "claim" contemplated in § 6512(b)(3)(B) could be filed "within 3 years from the time the return was filed," such that the applicable look-back period under § 6512(b)(3)(B) would be three years, if the claim were itself filed on a tax return. Lundy in fact argues that Congress must have intended the claim described in § 6512(b)(3)(B) to be a claim filed on a return, because there is no other way to file a claim for refund with the IRS. Brief for Respondent 28, 30 (citing 26 CFR § 301.6402–3(a)(1) (1995)). Lundy therefore argues that § 6512(b)(3)(B) incorporates a uniform 3-year look-back period for Tax Court cases: If the taxpayer files a timely return, the notice of deficiency (and the "claim" under § 6512(b)(3)(B)) will necessarily be filed within three years of the return and the look-back period is three years; if the

taxpayer does not file a return, then the claim contemplated in § 6512(b)(3)(B) is deemed to be a claim filed with, and thus within three years of, a return and the look-back period is again three years.

Like the Fourth Circuit's approach, Lundy's reading of the statute has the convenient effect of ensuring that taxpayers in Lundy's position can almost always obtain a refund if they file in Tax Court, but we are bound by the terms Congress chose to use when it drafted the statute, and we do not think that the term "claim" as it is used in § 6512(b)(3)(B) is susceptible of the interpretation Lundy has given it. The Internal Revenue Code does not define the term "claim for refund" as it is used in § 6512(b)(3)(B), cf. 26 U. S. C. § 6696(e)(2) ("For purposes of sections 6694 and 6695 . . . [t]he term 'claim for refund' means a claim for refund of, or credit against, any tax imposed by subtitle A"), but it is apparent from the language of § 6512(b)(3)(B) and the statute as a whole that a claim for refund can be filed separately from a return. Section 6512(b)(3)(B) provides that the Tax Court has jurisdiction to award a refund to the extent the taxpayer would be entitled to a refund "if on the date of the mailing of the notice of deficiency *a claim* had been filed." (Emphasis added.) It does not state, as Lundy would have it, that a taxpayer is entitled to a refund if on that date "a claim and a return had been filed."

Perhaps the most compelling evidence that Congress did not intend the term "claim" in § 6512 to mean a "claim filed on a return" is the parallel use of the term "claim" in § 6511(a). Section 6511(a) indicates that a claim for refund is timely if it is "filed by the taxpayer within 3 years from the time the return was filed," and it plainly contemplates that a claim can be filed even "if no return was filed." If a claim could *only* be filed with a return, as Lundy contends, these provisions of the statute would be senseless, cf. 26 U. S. C. § 6696 (separately defining "claim for refund" and "return"), and we have been given no reason to believe that Congress

meant the term "claim" to mean one thing in § 6511 but to mean something else altogether in the very next section of the statute. The interrelationship and close proximity of these provisions of the statute "presents a classic case for application of the 'normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning.'" *Sullivan* v. *Stroop*, 496 U. S. 478, 484 (1990) (quoting *Sorenson* v. *Secretary of Treasury*, 475 U. S. 851, 860 (1986) (internal quotation marks omitted)).

The regulation Lundy cites in support of his interpretation, 26 CFR § 301.6402–3(a)(1) (1995), is consistent with our interpretation of the statute. That regulation states only that a claim must "[i]n general" be filed on a return, *ibid.*, inviting the obvious conclusion that there are some circumstances in which a claim and a return can be filed separately. We have previously recognized that even a claim that does not comply with federal regulations might suffice to toll the limitations periods under the Tax Code, see, *e. g., United States* v. *Kales*, 314 U. S. 186, 194 (1941) ("notice fairly advising the Commissioner of the nature of the taxpayer's claim" tolls the limitations period, even if "it does not comply with formal requirements of the statute and regulations"), and we must assume that if Congress had intended to require that the "claim" described in § 6512(b)(3)(B) be a "claim filed on a return," it would have said so explicitly.

## IV

Lundy offers two policy-based arguments for applying a 3-year look-back period under § 6512(b)(3)(B). He argues that the application of a 2-year period is contrary to Congress' broad intent in drafting § 6512(b)(3)(B), which was to preserve, not defeat, a taxpayer's claim to a refund in Tax Court, and he claims that our interpretation creates an incongruity between the limitations period that applies in Tax Court litigation and the period that would apply in a refund

suit filed in district court or the Court of Federal Claims. Even if we were inclined to depart from the plain language of the statute, we would find neither of these arguments persuasive.

Lundy correctly argues that Congress intended § 6512(b)(3)(B) to permit taxpayers to seek a refund in Tax Court in circumstances in which they might otherwise be barred from filing an administrative claim for refund with the IRS. This is in fact the way § 6512(b)(3)(B) operates in a large number of cases. See *supra*, at 244–245. But that does not mean that Congress intended that § 6512(b)(3)(B) would always preserve taxpayers' ability to seek a refund. Indeed, it is apparent from the face of the statute that Congress also intended § 6512(b)(3)(B) to act sometimes as a bar to recovery. To this end, the section incorporates *both* the 2-year and the 3-year look-back periods from § 6511(b)(2), and we must assume (contrary to Lundy's reading, which provides a uniform 3-year period, see *supra*, at 248–249) that Congress intended for both those look-back periods to have some effect. Cf. *Badaracco*, 464 U. S., at 405 (STEVENS, J., dissenting) ("Whatever the correct standard for construing a statute of limitations . . . surely the presumption ought to be that some limitations period is applicable"). (Emphasis deleted.)

Lundy also suggests that our interpretation of the statute creates a disparity between the limitations period that applies in Tax Court and the periods that apply in refund suits filed in district court or the Court of Federal Claims. In this regard, Lundy argues that the claim for refund he filed with his tax return on December 28 would have been timely for purposes of district court litigation because it was filed "within 3 years from the time the return was filed," § 6511(b)(1) (incorporating by reference § 6511(a)); see also Rev. Rul. 76–511, 1976–2 Cum. Bull. 428, and within the 3-year look-back period that would apply under § 6511(b)(2)(A). Petitioner disagrees that there is any disparity, arguing that Lundy's interpretation of the statute is wrong and that

Lundy's claim for refund would not have been considered timely in district court. See Brief for Petitioner 12, 29–30, and n. 11 (citing *Miller* v. *United States*, 38 F. 3d 473, 475 (CA9 1994)).

We assume without deciding that Lundy is correct, and that a different limitations period would apply in district court, but nonetheless find in this disparity no excuse to change the limitations scheme that Congress has crafted. The rules governing litigation in Tax Court differ in many ways from the rules governing litigation in the district court and the Court of Federal Claims. Some of these differences might make the Tax Court a more favorable forum, while others may not. Compare 26 U. S. C. § 6213(a) (taxpayer can seek relief in Tax Court without first paying an assessment of taxes) with *Flora* v. *United States*, 362 U. S. 145, 177 (1960) (28 U. S. C. § 1346(a)(1) requires full payment of the tax assessment before taxpayer can file a refund suit in district court); and compare 26 U. S. C. § 6512(b)(3)(B) (Tax Court must assume that the taxpayer has filed a claim "stating the grounds upon which the Tax Court" intends to award a refund) with 26 CFR § 301.6402–2(b)(1) (1995) (claim for refund in district court must state grounds for refund with specificity). To the extent our interpretation of § 6512(b)(3)(B) reveals a further distinction between the rules that apply in these forums, it is a distinction compelled by the statutory language, and it is a distinction Congress could rationally make. As our discussion of § 6512(b)(3)(B) demonstrates, see *supra*, at 244–245, all a taxpayer need do to preserve the ability to seek a refund in the Tax Court is comply with the law and file a timely return.

We are bound by the language of the statute as it is written, and even if the rule Lundy advocates might "accor[d] with good policy," we are not at liberty "to rewrite [the] statute because [we] might deem its effects susceptible of improvement." *Badaracco*, *supra*, at 398. Applying § 6512(b)(3)(B) as Congress drafted it, we find that

the applicable look-back period in this case is two years, measured from the date of the mailing of the notice of deficiency. Accordingly, we find that the Tax Court lacked jurisdiction to award Lundy a refund of his overwithheld taxes. The judgment is reversed.

*It is so ordered.*

JUSTICE STEVENS, dissenting.

JUSTICE THOMAS has cogently explained why the judgment of the Court of Appeals should be affirmed. I therefore join his opinion. Because one point warrants further emphasis, I add this additional comment. In my view the Commissioner's position, and that of the majority, misses the forest by focusing on the trees. The predecessor to 26 U. S. C. § 6512(b) was amended to protect the interests of a taxpayer who receives a notice of deficiency from the IRS and later determines that the asserted underpayment was in fact an overpayment. *Post*, at 261–262. Congress expressly intended to guard against the possibility that the time for claiming a refund might lapse before the taxpayer in these circumstances realizes that he is entitled to claim a refund. As JUSTICE THOMAS has demonstrated, there is no need to read § 6512(b)(3)(B)—a provision designed to benefit the taxpayer who receives an unexpected deficiency notice— as giving the IRS an arbitrary right to shorten the taxpayer's period for claiming a refund if that taxpayer has not yet filed a return. The Court's reading of the statute converts an intended benefit into a handicap.

JUSTICE THOMAS, with whom JUSTICE STEVENS joins, dissenting.

Under the Internal Revenue Service's longstanding interpretation of 26 U. S. C. §§ 6511(a) and (b), Lundy would have collected a refund if he had filed suit in district court. The majority assumes, and I am prepared to hold, that that interpretation of § 6511 is correct. Section 6512(b)(3)(B) in-

corporates the look-back periods of § 6511 for proceedings to recover a refund in Tax Court. Section 6512(b)(3)(B) also contains some language that permits a taxpayer in certain circumstances to collect a refund although he has not actually filed an administrative claim (or has not filed one in what would be a timely fashion under § 6511(a)). Because in my opinion nothing in § 6512(b)(3)(B) suggests that Congress intended to *shorten* the look-back period in a proceeding in Tax Court, I would hold that Lundy is entitled to his refund.

## I

Since 1976, the Service has taken the position that if a taxpayer files a delinquent return containing an accurate claim[1] for a refund within three years after the date on which the tax is deemed to have been overwithheld from his pay, then he can obtain a refund of that tax. See Rev. Rul. 76–511, 1976–2 Cum. Bull. 428 (construing 26 U. S. C. § 6511(a)). This is because "[a] return shall be a claim for refund if it contains a statement setting forth the amount determined as an overpayment and advising that such amount shall be refunded to the taxpayer," Rev. Rul. 76–511, 1976–2 Cum. Bull., at 428, and because a claim filed simultaneously with a return is filed "within 3 years from the time the return was filed" under 26 U. S. C. § 6511(a). The net effect of the interpretation of §§ 6511(a) and (b) adopted in Revenue Ruling 76–511 is that "if (i) a return is filed more than two but less than three years after it is due and (ii) a refund claim is filed contemporaneously or subsequently, 'the refund would [be] allowable since the overpayment would have been made within the 3-year period immediately preceding the filing of the claim.'" Brief for Petitioner 29, n. 11 (quoting

---

[1] I use the term "accurate claim" throughout to describe a claim for refund that (1) states the legally sufficient ground upon which the taxpayer eventually attempts to recover, and (2) contains enough detail to allow the taxpayer to obtain a refund in a district court or the Court of Federal Claims under 26 CFR § 301.6402–2(b)(1) (1995).

Rev. Rul. 76–511, 1976–2 Cum. Bull., at 429). The majority assumes that this interpretation of § 6511 is correct. See *ante,* at 251–252. Under this reading of § 6511, Lundy would have received a 3-year look-back period and a refund if he had filed a suit in a district court or the Court of Federal Claims, rather than filing a petition in the Tax Court.[2]

The harder step is determining whether the Service's interpretation of § 6511 itself is correct. Arguably, § 6511(a) is ambiguous as to what point in time is relevant in determining whether "no return was filed." The Ninth Circuit has held in *Miller* v. *United States,* 38 F. 3d 473, 475 (1994), that "[t]he point at which one must determine whether a return has or has not been filed [for purposes of § 6511(a)] must be two years after payment" of the taxes.

Congress' intent on this issue is difficult to discern. There is reason to think that Congress simply did not consider how being delinquent in filing a return would affect a taxpayer's right to recover a refund—in *any* forum. It appears that Congress chose the 3-year limitation period in § 6511(a) to correspond with the amount of time the Government has to make an assessment. See S. Rep. No. 1983, 85th Cong., 2d Sess., 98–99 (1958). As construed by the Service in Revenue Ruling 76–511, subsection (a) of § 6511 *does* create a limitation period for any taxpayer that will correspond with the period for assessment: the taxpayer has three years from the time he files his return to file a claim, and the Government usually has three years from the time the taxpayer files a return, for assessment. However, in cases where the taxpayer does not timely file his return, subsection (b) takes back the symmetry that subsection (a) bestows. In those

---

[2] The Commissioner concedes that Lundy's actual return constituted a claim for refund, see 26 CFR § 301.6402–3(a)(5) (1995); Rev. Rul. 76–511, 1976–2 Cum. Bull. 428, and "provided a sufficient basis for the determination of [his] correct liability," Brief for Petitioner 17, n. 6. The Commissioner also agrees that if Lundy receives a 3-year look-back period measured from the date of his actual return, then he will receive his refund.

cases, the taxpayer may only recover a refund of tax that was paid within the three years prior to his claim, yet the 3-year statute of limitation on assessments is triggered by the filing of the *return*.[3]  These facts suggest that in enacting § 6511, Congress quite likely was simply not thinking about the effects on delinquent filers.  Or, to put it another way, Congress may have had *no* intent regarding whether §§ 6511(a) and (b) would permit a taxpayer to take advantage of a 3-year look-back period where the taxpayer's return is not filed on time, and where the 3-year period thus cannot correlate with the Government's assessment period.

Nevertheless, in light of the language of § 6511(a), the absence of any reason to think that Congress affirmatively intended to prevent taxpayers who file their returns more than two years late (but less than three years late) from collecting refunds, and the Service's 20-year interpretation of § 6511 in its Revenue Ruling, I would interpret § 6511 in conformity with the Revenue Ruling.

## II

Section 6512(b), rather than § 6511, directly governs the amount of a tax refund that may be awarded in the Tax Court.  The most striking aspect of § 6512(b)(3)(B), however, is that it incorporates the look-back provisions of § 6511—it directs the Tax Court to determine what portion of tax was paid "within the period which would be applicable under section 6511(b)(2)."  To my mind, then, the question is whether the additional language in § 6512(b)(3)(B) (that directing the Tax Court to pretend that "on the date of the mailing of the notice of deficiency a claim had been filed"), the statute's

---

[3] For example, if the taxpayer's return is due on April 15, 1990, he is deemed to pay on that date any tax previously withheld.  If he files his return on April 16, 1990, he must still file his claim by April 15, 1993, but the Government will have until April 16, 1993, for assessment.  The more delinquent the return is, the greater the disparity between the taxpayer's time for filing a claim and the Government's time for assessment.

legislative history, or other related statutory provisions indicate that Congress meant to prevent a taxpayer from receiving his refund from the Tax Court, even though the other courts could have ordered the refund.

Section 6512(b)(3)(B) does not merely incorporate § 6511, of course. Instead, § 6512(b)(3)(B) provides that the Tax Court is to determine what portion of tax was paid "within the period which would be applicable under section 6511(b)(2) . . . , *if on the date of the mailing of the notice of deficiency a claim had been filed."* (Emphasis added.) The question is whether the addition of this language somehow prevents a taxpayer in Lundy's situation from collecting a refund in Tax Court. In asserting that § 6512(b)(3)(B) does not permit recovery here, the Commissioner must tacitly rely upon one of two theories of interpreting that provision—that adopted by the Tax Court or that adopted by the majority.

Under the Tax Court's interpretation in this case, "section 6512(b)(3)(B) directs us to focus on the situation as it would have been on a specified date—the date of the mailing of the notice of deficiency." 65 TCM 3011, 3014 (1993), ¶ 93,278 RIA Memo TC. According to the Tax Court, § 6512(b)(3)(B) "requires us to 'take a snapshot' of the situation" on the date the notice of deficiency was mailed. *Ibid.* Hence, the applicable look-back period is the period that *would have been applicable* under § 6511(b)(2), if on the date of the mailing of the notice of deficiency a claim had been filed *and if a determination as to the appropriate look-back period had also been made at that time*—that is, without the benefit of the information that a real claim was ultimately filed less than three years after the tax was paid. The majority's interpretation of § 6512(b)(3)(B) is only slightly different—in a way that does not help Lundy. Under that interpretation, "the 'claim' contemplated in that section [is to be] treated as the *only* mechanism for determining whether a taxpayer can recover a refund." *Ante*, at 242 (emphasis added).

Section 6512(b)(3)(B), does not, however, require the Tax Court to limit its consideration to events that occurred on or before the notice of deficiency was mailed. Indeed, if anything, the variance in tenses ("would *be* applicable . . . if . . . a claim *had been* filed") suggests that the Tax Court should determine the proper look-back period in the same way that courts normally determine the applicability of statutes of limitation—with whatever information it has at the time that it rules.

Nor does the language of § 6512(b)(3)(B) make clear any intent that the deemed claim of § 6512(b)(3)(B) be treated as the only mechanism for determining whether a taxpayer can recover a refund. The statute incorporates the look-back periods of § 6511 and then explicitly tells the Tax Court that, in applying § 6511, it should pretend that an event happened "whether or not" it actually did happen;[4] it does not tell the Tax Court to ignore events that did happen.[5] If Congress

---

[4] Lundy argues that his actual claim superseded any claim "deemed" by § 6512(b)(3)(B) to have been filed on the date the notice of deficiency was mailed, and there is no reason to believe that a claim that would invoke the 3-year look-back period could not supersede a premature claim (*i. e.*, a claim that preceded a return) and thereby give the claimant the benefit of the full 3-year look-back period. Indeed, the Commissioner apparently agreed at oral argument that a taxpayer who files a nonreturn claim before filing a return, then *actually files a district court suit,* then dismisses that suit, then files a return containing an accurate claim, and finally files another suit in district court asserting this ground would be in the same position as one who had never filed the first premature claim. That is, assuming that Revenue Ruling 76–511 is a correct interpretation of a taxpayer's right to recover in district court, the taxpayer in this hypothetical would be permitted to recover if the return was filed within three years from the time the tax was paid. See Tr. of Oral Arg. 25–26.

[5] I think it odd that the majority, like the Commissioner, reads § 6512(b)(3)(B) as taking into account one real fact that the subsection does not explicitly tell the courts to consider in determining the look-back period (the fact that no real return had been filed at the time the notice of deficiency was mailed), but as not taking into account another real fact

had meant to say what the majority thinks it said, it could have added the words "no other claim is to be given effect." Or it might have directed the Tax Court to determine if the tax was paid "within the period which would be applicable under § 6511(b)(2) *with respect to* a claim filed on the date the notice of deficiency was mailed." Cf. n. 6, *infra* (26 U. S. C. § 6512(b)(3)(C) uses the phrase "period which would be applicable under section 6511(b)(2) . . . *in respect of* [a] claim" when denoting the period applicable to a particular claim).

The Commissioner notes that § 6512(b)(3)(C) provides for the situation in which "a refund claim had *actually* been filed '*before* the date of the mailing of the notice of deficiency'" and argues that § 6512(b) does not provide any "additional" jurisdiction in the Tax Court for refund claims made "after" the notice of deficiency is issued. Reply Brief for Petitioner 3–4 (emphasis in original).[6] But Lundy does not argue for "additional" jurisdiction; he asks only that § 6512(b)(3)(B), which appears to incorporate the look-back periods applicable in district court, not be construed as cutting off in the Tax Court a right to obtain a refund that he would have had in district court.

The Commissioner is perhaps making an *expressio unius* argument based upon the existence of § 6512(b)(3)(C). It is true that my interpretation of § 6512(b)(3)(B)—which permits a taxpayer to rely upon real claims as well as the deemed claim—might render § 6512(b)(3)(C) unnecessary.

---

(the fact that the taxpayer has filed a real return that also contains an accurate claim less than three years after the tax was paid).

[6] Section 6512(b)(3)(C) provides that the Tax Court may award tax paid "within the period which would be applicable under section 6511(b)(2) . . . in respect of any claim for refund filed within the applicable period specified in section 6511 and before the date of the mailing of the notice of deficiency," provided that the claim was still viable at the time the notice of deficiency was mailed.

But it appears that § 6512(b)(3)(C) was not added to carve out an exception to some supposed implicit requirement in § 6512(b)(3)(B) that the only recognizable claim in the Tax Court be the hypothetical one. Rather, it was meant to clarify that a certain application of § 6512(b)(3)(B) was permissible. The Senate Report that accompanied the 1962 amendment to § 6512(b), which added what is now § 6512(b)(3)(C), explained:

> "Since the 1954 enactment, . . . the Internal Revenue Service has in practice interpreted the law [*i. e.,* § 6512(b)(3)(B)] as permitting the refund of amounts where valid claims have been timely filed, as well as where these claims could have been filed on the date of the mailing of the notice of deficiency.

> "Your committee believes it is desirable to amend the language of present law (sec. 6512(b)([3])) to make it clear that the statute conforms with the interpretation of this section followed by the Service since the enactment of the 1954 Code." S. Rep. No. 2273, 87th Cong., 2d Sess., 15 (1962).

Rather than demonstrating that § 6512(b)(3)(B) was meant to prohibit recognition of "real" claims, this Report, and the Service's pre-1962 interpretation of § 6512(b)(3)(B) described therein, suggest the opposite: that subsection (b)(3)(B) did and does recognize "real" claims that would be recognized under § 6511.

Congress likely failed to state specifically in § 6512(b) whether a subsequently filed claim should be considered in Tax Court because it simply did not consider how that statute would be applied to the taxpayer who failed to file a timely return—just as it likely did not consider how § 6511 itself would be applied to the delinquent filer. Although Congress' intent, if any, as to how these statutes should apply where a late return is filed is obscure, its intent on two more general issues is more discernible.

First, Congress meant as a general matter to incorporate the look-back periods of §6511(b)(2) into §6512(b)(3)(B).[7] If Congress had intended the Commissioner's construction of §6512(b)(3)(B), there would have been no reason to refer to §6511; instead, it could have stated the look-back periods much more simply and clearly, *e. g.*, by specifying that a 3-year look-back period should apply if the taxpayer filed a return before the notice of deficiency was mailed, and that otherwise a 2-year look-back period should apply. Although, as noted below, Congress clearly intended to augment the taxpayer's ability to recover a refund in Tax Court proceedings in certain circumstances, there is no evidence of any intent to prevent the taxpayer from recovering in Tax Court a refund that he could have obtained in a suit in district court.

Second, by adding the "if" clause in §6512(b)(3)(B), Congress clearly did mean to favor a taxpayer who is notified, that he owes the Government money, is effectively forced to go to court to contest the deficiency, and is required to put together his records and possibly litigate against the Government, only to discover during that litigation that it is *he* who has provided a loan to the *Government*. The deemed claim of §6512(b)(3)(B) is intended to protect the filer of a timely return who receives a notice of deficiency in the mail too late to gather his wits, review his papers more carefully, and file an accurate claim for a refund (or an accurate assertion of a right to a refund in a Tax Court petition) prior to the expiration of the 3-year period. When Congress amended 26

---

[7] The Fourth Circuit apparently held that, if a taxpayer files a return prior to or simultaneously with filing his Tax Court petition, he will always get the benefit of a 3-year look-back period ending on the date the notice of deficiency was mailed. See 45 F. 3d 856, 868 (1995). This interpretation would protect a taxpayer who, unlike Lundy, filed a return more than three years after the tax was paid. The issue need not be decided in this case. Lundy did file a return containing an accurate claim for refund within three years of the time his tax was paid, and he would have received a refund if he had sued in district court.

U. S. C. § 322(d), the predecessor of § 6512(b), in 1942, the House Report explained:

> "In order to give the taxpayer the privilege to claim an overpayment before the [Tax Court] by such amendments to his petitions as may be allowed under the rules of the [Tax Court], without the period of limitations running against the refund of such overpayment after the notice of deficiency is mailed, [§ 322(d) is amended] to provide that the period of limitations which determines the portion of the tax which may be credited or refunded is measured from the date the notice of deficiency is mailed, rather than from the date the petition is filed." H. R. Rep. No. 2333, 77th Cong., 2d Sess., 121 (1942).[8]

Because § 6512(b)(3)(B) incorporates the look-back periods of § 6511(b) and because it appears that the variance in the Tax Court statute was meant to be *more* protective of the taxpayer litigating in the Tax Court in certain circumstances, I would hold that Lundy may recover his refund.

### III

Lundy argues that he was no more negligent for failing to file his return within three years than he was for failing to file it within two years, and that it would be irrational for Congress to forfeit Lundy's refund simply because the Service "beat him to the punch" in sending him a deficiency notice. I disagree. Allowing a delinquent taxpayer a shorter period of time within which to file his claim would not be

---

[8] The majority reads the Fourth Circuit's opinion as barring a taxpayer's reliance upon the deemed claim in meeting § 6511's requirements to obtain the 3-year look-back period (and as thus preventing a taxpayer who filed a timely return but filed a real claim more than three years later from recovering his refund in Tax Court). *Ante,* at 247–248. If that was indeed the Fourth Circuit's ruling, then it clearly was incorrect. Under my interpretation, either the deemed claim *or* a real claim can enable a taxpayer to recover his refund in the Tax Court.

irrational, nor would giving a taxpayer an incentive to submit his return before the Service calculates his tax obligation, locates him, and sends him a deficiency notice. Thus, for example, Congress might well have provided that if the notice of deficiency is sent prior to the taxpayer's filing his return, the taxpayer will have only a 2-year look-back period in *any* forum.

What would not make much sense to me, however, would be deliberately to adopt this scheme only in Tax Court proceedings—*i. e.*, to punish only the taxpayer whose cash reserves make it impossible for him to provide the Government a still larger loan in any amount it demands while the taxpayer pursues relief in the district court or Court of Federal Claims, the taxpayer who is too unsophisticated to realize that a suit in district court could preserve his right to a refund, and the taxpayer whose expected refund is too small in relation to attorney's fees and other costs to justify a suit in district court. Obviously Congress could constitutionally have adopted such a strange scheme, but I will not simply presume that it has done so. Indeed, the Commissioner does not suggest any reason why Congress would have intended to do this; rather, it merely notes that there are many (generally unrelated) differences between Tax Court and district court proceedings and insists that the plain language of §§ 6511 and 6512(b)(3)(B) mandates this result.

As noted previously, the harder step for me is the antecedent one of determining that § 6511 itself permits a refund in these circumstances, because it does not appear to me that either § 6511 or § 6512(b) was written with delinquent filers in mind. Once that hurdle is cleared, however, it makes no sense to bar the taxpayer's recovery in the Tax Court alone, when the language of § 6512(b)(3)(B) does not mandate this result and when there is no reason to think that Congress intended it.