T.C. Memo. 2011-23

UNITED STATES TAX COURT

PERRY DEAN KNOWLES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8555-08.                    Filed January 27, 2011.

Perry Dean Knowles, pro se.

<u>Duy P. Tran</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, <u>Judge</u>:  On January 14, 2008, respondent issued to
petitioner a notice of deficiency which determined a Federal
income tax deficiency of $1,502 for petitioner's 2005 tax year.
Petitioner filed a timely petition with this Court.  The issues
for decision are:  (1) Whether petitioner is entitled to a

capital loss carryover pursuant to section 1212(b);[1] (2) whether petitioner is permitted to increase his adjusted basis in either the Mexico Fund, Inc. (MXF), or the Mexico Equity and Income Fund, Inc. (MXE), pursuant to section 852(b)(3)(D)(iii); and (3) whether petitioner made an overpayment of tax attributable to a mathematical miscalculation.[2]

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner and his wife filed a joint 2005 Federal income tax return (2005 return), but petitioner's wife is not a party to this case.[3] At the time the petition was filed, petitioner resided in Granbury, Texas.

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code (Code) in effect for the year at issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Petitioner does not contest respondent's determination that he must include an additional $194 of qualified dividend income paid by America Movil and $16 of long-term capital gain income from the sale or exchange of Agere Systems shares.

[3] A notice of deficiency was issued to both petitioner and his wife on Jan. 14, 2008. The last day to petition this Court was Apr. 14, 2008. His wife did not petition the Court. Nor does the record indicate that she intended to petition the Court. This Court does not have jurisdiction over her tax matter.

The record contains tax returns for 2001, 2002, 2003, 2004, and 2005.[4]  In 2001 petitioner reported no capital gain or loss. Petitioner reported long-term capital gains of $26,984, $15,265, and $171 for tax years 2002, 2003, and 2004, respectively.[5] Petitioner contends that he sustained net capital losses of about $12,000 and $9,000 in at least 2 years before 2001.  Accordingly, he maintains that he is entitled to capital loss carryovers of $9,000 and $6,000 from those 2 respective years.[6]  However, petitioner asserts that he was unaware of the capital loss carryover rule and thus did not carry these amounts forward. Upon discovering the rule in 2007, he filed an amended 2005 return.  Respondent, however, did not accept the amended return.

On January 3, 1996, petitioner purchased shares of MXF and MXE, each of which is a regulated investment company (RIC).[7]

---

[4]Respondent and petitioner were unable to produce petitioner's returns for years before 2001.  Respondent's counsel indicated that the IRS' policy is to destroy returns after 7 years, and respondent's counsel confirmed that petitioner's returns were destroyed accordingly.  Petitioner was unable to supply respondent with copies of his returns for tax years 1991-2000 as they were destroyed in a fire.

[5]Long-term capital gains are profits from a transaction in which a taxpayer sells a capital asset, as defined by sec. 1221, for more than the taxpayer's basis in that property and has held that property for more than 1 year.

[6]Petitioner contends that he deducted a $3,000 loss from the $12,000 loss and the $9,000 loss in the years he realized those losses.

[7]RICs, commonly known as mutual funds, issue shares to raise
                                        (continued...)

Petitioner paid $7,580 for 500 shares of MXF and $4,955 for 500 shares of MXE.  Petitioner owned these shares from 1996 to 2005, and he received dividends and capital gain distributions from both MXF and MXE during that time.  The record contains various brokerage statements, Forms 1099-DIV, Dividends and Distributions, and tax returns; however, these documents do not account for the entire period petitioner owned MXF and MXE shares.[8]

According to the "income activity" section of petitioner's January 1997 brokerage statement, he received a dividend of $90 and a capital gain distribution of $245 from MXE on January 13, 1997.  The following day he received a dividend of $220 from MXE. Then, on January 31, 1997, petitioner received a $20 dividend from MXF.  In another section of the monthly statement, the entire $575 received from MXF and MXE in the form of dividends and capital gain distributions was classified as "dividends from mutual funds".  Petitioner received the capital gain distribution in the form of a cash payment.

Petitioner received capital gain distributions of $297.95, $25, $152.98, and $289.45 from MXF on January 30, 1998, January

[7](...continued)
capital that is later invested in common stocks, corporate bonds, short-term money market funds, and other securities.

[8]For instance, brokerage statements are available for portions of 1997, 1998, 1999, and 2001, but are not available for the other relevant years.

31, 2001, January 15, 2004, and January 14, 2005, respectively. In addition, petitioner received capital gain distributions of $1,780 and $465 from MXE on January 9 and 19, 1999, respectively. Each amount reflected on the available brokerage statements shows a corresponding cash increase. The two amounts from 2004 and 2005 are reflected on Forms 1099-DIV. Moreover, there is neither evidence that petitioner received a deferred capital gain distribution from either MXF or MXE, nor any indication that petitioner received a Form 2439, Notice to Shareholder of Undistributed Long-Term Capital Gains.

Petitioner included $1,333 on line 13, "Capital gain distributions", of his 2002 Schedule D, Capital Gains and Losses. However, he reported no capital gain distributions on his 2001, 2003, 2004, and 2005 returns. In addition, it does not appear that capital gain distributions from MXF and MXE were reported on any other line of the 2001, 2003, 2004, and 2005 returns.

On January 3, 2005, petitioner sold 500 shares of MXF and 500 shares of MXE for net proceeds of $10,804 and $8,499, respectively. Petitioner did not report those proceeds on the 2005 return. However, he did report $26,440 of wages from his wife's employment, $243 of taxable interest, and $579 of unemployment compensation for total ordinary income of $27,262. In addition, he reported $15,065 of qualified dividends and $86,073 of long-term capital gains for a total of $101,138

subject to preferential rates.  An adjusted gross income of $128,400 was then reduced by a $4,000 tuition and fees deduction, a $10,000 standard deduction, and four exemptions of $3,200 each, reflecting taxable income of $101,600.  Petitioner then manually calculated and reported tax of $18,044 on a handwritten return for tax year 2005.  The 2005 return was timely filed in April 2006.

OPINION

I.  Burden of Proof

In general, the Commissioner's determinations in the notice of deficiency are presumed correct, and taxpayers bear the burden of disproving those determinations.  See Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Tax deductions are a matter of legislative grace; thus taxpayers have the burden of proving that they are entitled to each claimed deduction.  See Rule 142(a)(1); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  The burden on factual issues that affect a taxpayer's liability for tax may shift to the Commissioner if "a taxpayer introduces credible evidence with respect to * * * such issue."  See sec. 7491(a)(1).  However, this provision does not apply if the taxpayer has failed to comply with the substantiation requirements.  See sec. 7491(a)(2)(A).

Pursuant to section 6001 and the regulations thereunder, taxpayers are required to keep sufficient records to establish

the amounts of deductions claimed on any Federal tax return. See sec. 1.6001-1(a), Income Tax Regs. Petitioner has not provided credible evidence that he is entitled to a capital loss carryover. This Court is not required to accept petitioner's uncorroborated testimony that he sustained net capital losses in previous years. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Accordingly, the burden with respect to the capital loss carryover issue remains with petitioner.

With respect to petitioner's adjusted bases in MXF and MXE, because this Court's decision is not affected by the placement of the burden of proof, it is unnecessary for this Court to determine whether petitioner has met the requirements of section 7491(a).

## II. Capital Loss Carryover

As he is a married individual filing a joint return, petitioner's losses from sales of capital assets are allowed only to the extent of the gains from such sales or exchanges, plus the lower of $3,000 or the excess of such losses over such gains. Sec. 1211(b). Excess net capital losses beyond the $3,000 threshold are treated as either short-term or long-term capital losses in the succeeding taxable year, depending on the character of the capital loss that created the carryover. See sec. 1212(b)(1). To determine the "excess" referred to in section 1212(b)(1), the amount allowed under section 1211(b)(1) or (2) is

used in the calculation rather than the amount of the deduction actually claimed in a given tax year. See sec. 1212(b)(2). Therefore, a taxpayer's capital loss carryover is reduced to the extent a deduction is allowed regardless of whether the taxpayer benefits from the deduction or chooses not to claim the deduction. See sec. 1212(b)(1); Cleveland v. Commissioner, T.C. Memo. 1983-299 (holding that it is not relevant whether the taxpayer claimed any amount of the capital loss carryover in intervening years); see also Rev. Rul. 76-177, 1976-1 C.B. 224 (ruling that a taxpayer must take into account the allowed deduction for purposes of determining the capital loss carryover).

Petitioner asserts that he is entitled to capital loss carryovers of $9,000 and $6,000 from years before 2001. Even if these amounts were otherwise adequately substantiated, the carryovers would have been exhausted before 2005, the sole year before this Court. Since petitioner reported no capital gain or loss in 2001, he would have been allowed a $3,000 deduction under section 1211(b) on his joint return, assuming he had a sufficient carryover from tax year 2000. The excess beyond $3,000 would then carry over to 2002 where he would exhaust the entire carryover since he reported a $26,984 capital gain. Therefore, even if petitioner had a $15,000 capital loss carryover from tax year 2000, it would no longer exist after tax year 2002 whether

he claimed the allowable capital loss carryover deductions or not.  In addition, a capital loss carryover was not created in tax year 2003 or 2004 since a net gain was reported in both years.

Respondent was unable to produce returns for years before 2001.  Petitioner contends that it is respondent's burden to produce these records; however, as discussed above, petitioner has not complied with the substantiation requirements of section 6001.  Therefore, the burden does not shift to respondent. Petitioner has failed to meet his burden of proving that he generated a capital loss carryover in any previous year, and even if this Court accepted petitioner's recollection, the alleged carryover would be insufficient to affect the tax year at issue. Therefore, this Court finds that petitioner is not entitled to a capital loss carryover deduction for tax year 2005.

III. Capital Gain Calculation for Sale of MXF and MXE Shares

Income from whatever source derived is includable in gross income unless excluded by statute.  Sec. 61(a).  Gains derived from dealings in property are specifically included in gross income.  Sec. 61(a)(3).  Pursuant to section 1001, taxpayers generally must recognize gain when the amount realized from the disposition of their property exceeds the adjusted basis in the property.  The gain is calculated by subtracting the adjusted basis from the amount realized.  See sec. 1001(a).  Petitioner

concedes that he must recognize gain from the sale of both his MXF and MXE shares. His only disagreement with respondent on this issue is whether he is permitted to increase his bases for taxes previously paid on capital gain distributions from MXF and MXE. Accordingly, this Court must determine whether a basis adjustment is proper.

Generally, the adjusted basis equals the initial cost unless an adjustment is otherwise provided for in the Code. Secs. 1011(a), 1012. An RIC can choose either to distribute its capital gains in the form of capital gain as dividends or not to distribute its capital gain as dividends and make a designation instead. See sec. 852(b)(3)(C).

If an RIC chooses to pay a capital gain dividend, its shareholders must include the dividend in their long-term capital gain income. Sec. 852(b)(3)(B). Similarly, if an RIC chooses to make a capital gain designation, its shareholders must include the amount in their long-term capital gain income. Sec. 852(b)(3)(D)(i). A capital gain designation, however, creates other tax consequences as well. For instance, shareholders must increase their adjusted basis when a capital gain designation is made. Sec. 852(b)(3)(D)(i), (iii). A tax is imposed on an RIC if it has capital gains in excess of its capital gain dividends paid deduction. Sec. 852(b)(3)(A). RIC shareholders are deemed to have paid their pro rata shares of this tax and are allowed to

take a credit or refund for the same amount. Sec.
852(b)(3)(D)(ii). In addition, a shareholder's basis in RIC
shares is increased by the excess of the undistributed capital
gains allocable to the shares over the tax deemed paid by the
shareholder. Sec. 852(b)(3)(D)(iii).

In each of the years 2002 through 2004 petitioner received
capital gain distributions in the form of cash payments relating
to his shares in MXF and MXE. There is no evidence that either
company, by Form 2439 or otherwise, ever designated with respect
to his shares any undistributed capital gain. Nor is there
evidence that any such gain was included in his gross income.
Accordingly, he is not entitled to a basis adjustment under
section 852(b)(3)(D)(iii).

Petitioner purchased MXF shares for $7,580 and sold them
for $10,804 over a year later. Therefore, petitioner must
recognize $3,224 of long-term capital gain under section 1001
upon the shares' disposition. Petitioner purchased MXE shares
for $4,955 and sold them for $8,499 over a year later.
Consequently, petitioner must recognize $3,544 of long-term
capital gain under section 1001 upon the shares' disposition.

IV. Tax Court Jurisdiction

The Tax Court has jurisdiction in a deficiency case to
determine that a taxpayer has made an overpayment of income tax
for the same taxable year at issue. See sec. 6512(b)(1). A

credit or refund is not allowed unless this Court finds as part of its decision that one of the provisions of section 6512(b)(3) is met. Section 6512(b)(3)(B), the applicable law, directs this Court to the lookback periods set forth in section 6511(b)(2). See also Commissioner v. Lundy, 516 U.S. 235, 242 (1996). The notice of deficiency petitioner received is dated January 14, 2008, well before the expiration of the 3-year lookback period provided in section 6511(a) since the 2005 return was timely filed in April 2006. All of petitioner's payments for tax year 2005 were paid or deemed paid within 3 years of the mailing of the notice of deficiency. Therefore, this Court has jurisdiction to award petitioner a credit or refund if it finds that an overpayment occurred.

V.   Tax Liability Calculation and Overpayment

The Jobs and Growth Tax Relief Reconciliation Act of 2003 (2003 Tax Act), Pub. L. 108-27, secs. 301 and 302, 117 Stat. 758, 760, reduced capital gains rates and taxed certain individual dividend income at the newly-lowered capital gains rates. Before the relevant provisions of the 2003 Tax Act took effect, the maximum capital gains rate was 20 percent. The 2003 Tax Act reduced the rates to 5 and 15 percent, respectively. Id. sec. 301(a), 117 Stat. 758. These tax rate reductions apply to tax

years ending on or after May 6, 2003.  Id. sec. 301(d), 117 Stat. 760.[9]

Before the relevant provisions of the 2003 Tax Act took effect, dividends received by individuals were included in gross income and taxed at ordinary income rates.  Under the new provision, qualified dividends will be taxed at 5 and 15 percent tax rates.  Id. secs. 301 and 302.  This preferential treatment for qualified dividends applies to tax years beginning after December 31, 2002.  Id. secs. 302(f), 117 Stat. 764.  Section 1(h) sets forth the manner in which the ordinary income rates and capital gains rates are applied.

Petitioner must increase his capital gain income by $3,224, $3,544, and $16 for the sales or exchanges of MXF, MXE, and Agere Systems shares, respectively.  Accordingly, petitioner's capital gain income is $92,857 rather than $86,073 as originally reported.  Petitioner must also increase his qualified dividend income by $194 for the unreported portion of the dividend he received from America Movil.  This results in total qualified dividend income of $15,259 rather than $15,065 as originally reported.  Under section 1(h)(11) qualified dividends are taxed as capital gains.  Therefore, petitioner's "net capital gain", as used in section 1(h), equals $108,116.  These corrections,

---

[9]The capital gain rate reduction and qualified dividend preferential treatment apply to tax year 2005.

however, do not affect petitioner's ordinary income of $27,262 reduced by deductions and exemptions of $26,800 for a net of $462.

The capital gain and qualified dividend income in tax year 2005 should be subject to preferential rates. It appears that the preferential rates of 5 and 15 percent were not applied to the qualified income reported on the 2005 return. Thus, this Court finds that petitioner would be entitled to any overpayment once the preferential rates are applied incident to Rule 155 computations.

This Court has considered all arguments the parties have made, and to the extent not discussed herein, this Court finds that they are meritless, moot, or irrelevant.

To reflect the foregoing,

Decision will be entered under Rule 155.