T.C. Memo. 2001-58

UNITED STATES TAX COURT

RONALD A. MASON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3632-00.                        Filed March 9, 2001.

<u>Dennis C. Becker</u>, for petitioner.

<u>Timothy S. Sinnott</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined the following defi-
ciency in, and additions under sections 6651(a)(1) and
(2) and 6654(a)[1] to, petitioner's Federal income tax (tax):

---

[1]All section references are to the Internal Revenue Code in
effect for the year at issue.  All Rule references are to the Tax
Court Rules of Practice and Procedure.

|        |            | Additions to Tax |                  |              |
|--------|------------|------------------|------------------|--------------|
| Year   | Deficiency | Sec. 6651(a)(1)  | Sec. 6651(a)(2)  | Sec. 6654(a) |
| 1996   | $2,175,165 | $356,574.15      | $396,193.50      | $21,719.58   |

The only issue remaining for decision is whether petitioner is liable for the additions to tax under section 6651(a)(1) and (2) for 1996.  We hold that he is.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioner resided in Hartford City, Indiana (Hartford), at the time the petition was filed.

Petitioner attended Purdue University from which he received a B.S. degree in agricultural economics in 1967.  While enrolled at Purdue University, petitioner took courses in economics, business management, and accounting.

After graduating from college, petitioner worked for approximately 7-½ years as a salesperson for College Life Insurance Company (College Life) in Indianapolis, Indiana.

While working for College Life, petitioner acquired and operated an A&W drive-in restaurant.  Around 1975, petitioner resigned from College Life and worked in the restaurant business on a full-time basis.  He has remained in the restaurant business to at least the date of the trial in this case.

In 1981, petitioner opened a restaurant in Hartford, known as Richard's restaurant, which was part of a chain of restaurants known by the same name.  Shortly thereafter, in 1983, petitioner

sold his A&W drive-in restaurant.

Since 1981, when petitioner opened Richard's restaurant in Hartford, he has operated it through an S corporation known as Kedd, Inc. (Kedd). At all relevant times, petitioner was president and owned 50 percent, and his spouse Melanie Mason (Ms. Mason) was the secretary and the treasurer and owned 50 percent, of the stock of Kedd.

In 1987, petitioner opened a second Richard's restaurant in New Castle, Indiana (New Castle). Petitioner operated the Richard's restaurant in New Castle through another S corporation known as TRM, Inc. (TRM). During the year at issue, petitioner and Ms. Mason each owned 50 percent of the stock of TRM. Sometime thereafter, TRM ceased doing business because the Richard's restaurant located in New Castle was not profitable, and TRM was generating losses.

From 1993 through at least the year at issue, petitioner owned 100 percent of the stock of another S corporation, Prints Unlimited, Inc. (Prints Unlimited), which operated an art gallery. Sometime thereafter, Prints Unlimited, which was generating losses, ceased doing business.

At least during 1995 and 1996, petitioner was heavily involved in investing in the stock market, which took a lot of his time. During those years, petitioner purchased varying numbers of shares of stock in at least 48 companies, which he

disposed of during 1996.

Throughout the period during which Kedd was operating Richard's restaurant in Hartford, petitioner maintained the books and records for that corporation and prepared its payroll using an Apple computer. At all relevant times, he also maintained the books and records and prepared the payroll for TRM and Prints Unlimited.

At all relevant times, petitioner's activities relating to the operations of two Richard's restaurants, an art gallery, and stock investments took a great deal of his time.

Since Kedd began operating Richard's restaurant in Hartford in 1981, TRM began operating Richard's restaurant in New Castle in 1987, and Prints Unlimited began operating an art gallery in 1993, petitioner retained an accountant to prepare the S corporation tax returns, Forms 1120-S, for those S corporations. That accountant relied on petitioner, who kept the books and records of those S corporations, to provide him with the information that he needed to prepare those returns.

Prior to 1985, petitioner prepared tax returns (returns) for Ms. Mason and himself without using a computer tax software program (tax software program). Starting in 1985 and at all relevant times thereafter, petitioner prepared those returns by using a tax software program. In 1992, a tax software program that petitioner had been utilizing was no longer usable on his

Apple computer. Nonetheless, petitioner timely filed his return for 1992. Sometime shortly thereafter, petitioner began to use a new tax software program, which was much more complicated than the tax software program he had previously used.

Petitioner did not file his returns for 1993 and 1994 until sometime in February or early March 2000.

During 1995, petitioner made estimated tax payments for his taxable year 1995 totaling $125,000. On April 15, 1996, petitioner requested respondent to grant him an automatic extension of time to file his 1995 return on or before August 15, 1996. That request was granted by respondent. Petitioner did not timely file his return for 1995. That was because he was too busy with his activities relating to the operations of two Richard's restaurants, an art gallery, and stock investments. On November 27, 1996, respondent prepared a substitute for return for petitioner for 1995. On March 13, 2000, petitioner filed his 1995 return with respondent. In that return, petitioner claimed an overpayment in the amount of $61,151, which he elected to apply as a credit to his taxable year 1996. Petitioner is barred by the statute of limitations from applying that overpayment as a credit to his tax liability for taxable year 1996.

Petitioner did not timely file his return for 1996. That was because he was too busy with his activities relating to the operations of two Richard's restaurants, an art gallery, and

stock investments. On November 28, 1999, respondent prepared a substitute for return for petitioner for that year. On March 27, 2000, petitioner mailed Form 1040, U.S. Individual Income Tax Return, for taxable year 1996 to the Internal Revenue Service Center in Cincinnati, Ohio. Respondent received that return on March 31, 2000. In the return that petitioner filed for 1996, petitioner reported total income on page 1, line 22, in the amount of $2,295,370 and adjusted gross income on page 1, line 31, in the amount of $2,290,890. Prior to the application of $4,376 of prepayment withholding credits and $587,491.31 of estimated tax payment credits, petitioner has a deficiency in tax for taxable year 1996 in the amount of $632,750. After application of those prepayment credits, petitioner underpaid his tax for taxable year 1996 in the amount of $40,882.69.

Petitioner filed a return for 1997 around mid-April 2000. As of October 23, 2000, the date of the trial in this case, petitioner had not filed his returns for 1998 and 1999.

Petitioner, without any assistance from anyone, prepared the returns for his taxable years 1993 through 1997 that he filed with respondent in 2000. Petitioner fully understands that he is required to file timely a return and to pay timely the tax that is due with respect to any such return.

Throughout the period 1983 to the time of the trial in this case, petitioner timely made estimated tax payments that he

believed he owed for each taxable year during that period.  By making those estimated tax payments, petitioner intended to, and believed he did, overpay his tax liability for each of those years, although he did not know the exact amount of any such overpayment.

In the notice of deficiency for 1996 that respondent issued to petitioner (notice), respondent determined, inter alia, that petitioner is liable for the additions to tax under section 6651(a)(1) and (2).

OPINION

Petitioner bears the burden of showing error in the determinations in the notice that remain at issue.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

It is petitioner's position that he is not liable for the additions to tax under section 6651(a)(1) and (2).  In support of that position, petitioner advances three arguments.  Petitioner first argues that the Excessive Fines Clause of the Eighth Amendment to the U.S. Constitution (Eighth Amendment) precludes imposition on him of the additions to tax under section 6651(a)(1) and (2).  The Eighth Amendment states:  "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  According to petitioner,

> The excessive fines clause is intended to limit fines
> directly imposed by and payable to the government.

Browning-Ferris Industries of Vt., Inc. v. Kelco Dis-
posal, Inc., 429 [sic] U.S. 257 * * * (1989), at 268
* * *.  The Eighth Amendment is not limited to criminal
cases. Austin v. United States, 509 U.S. 602 * * *
(1993), and, thus is applicable to civil tax penalty
cases such as Petitioners [sic].  See, e.g., Henry v.
United States, 73 F.Supp.2d 1303 (N.D. Fla. 1999).
(The Court at fn2 states, "I recognize that the [§
6651] penalties and interest may be possibly subject to
a constitutional challenge,. . . ."

It is stipulated that Petitioner has forfeited a
prior timely tax payment of $61,151 because he failed
to file timely his 1995 Form 1040.  Stip. ¶8.  As a
result of this forfeiture he was not able to apply this
1995 overpayment to his 1996 Form 1040 tax liability,
and thus, is obligated to pay an additional $40,882.69.
Stip. ¶9.

Thus, prior to imposing any §6651 penalty, the
Petitioner has already been penalized $102,033.69.  An
additional penalty under §6651 in addition to the
$102,033.69 Petitioner has already been penalized is
excessive under the Excessive Fines Clause.

Additions to tax, like those imposed for fraud under former

section 6653(b) and section 6663 and for failure to file timely

and to pay timely under section 6651(a)(1) and (2), are remedial,

and not punitive.  See Helvering v. Mitchell, 303 U.S. 391, 401

(1938); Ianniello v. Commissioner, 98 T.C. 165, 187 (1992).[2]

Such additions to tax are provided primarily as a safeguard for

the protection of the revenue and to reimburse the Government for

the significant expense of investigation and the loss resulting

from a taxpayer's actions or omissions.  See Helvering v. Mitch-

ell, supra.

---

[2]See also Healey v. Commissioner, T.C. Memo. 1996-260.

In Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257 (1989), the Supreme Court of the United States held that the Excessive Fines Clause of the Eighth Amendment does not extend to cases between private parties. See id. However, it left open the question whether that clause might extend to civil proceedings in which a private party instituted an action in the name of the United States and expects to share in any award of damages. See id. at 260, 276 n.22.

Regardless of whether Eighth Amendment protection might apply after Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., supra, to certain civil proceedings, that protection does not extend to the instant case. Petitioner's inability to obtain a refund or a credit of the overpayment that he made for his taxable year 1995 is the result of the operation of law applied to the facts in this case. Petitioner made a deliberate decision not to file his 1995 return until March 13, 2000. He thus knowingly failed to comply with his annual obligation to file his 1995 return, and he now seeks relief because he has lost a refund or a credit for 1995 to which he otherwise would have been entitled.

All taxpayers, including petitioner, are bound by the strict terms of the statutory provisions limiting refunds or credits for overpayments. In the instant case, petitioner decided not to file his 1995 return until March 13, 2000. In that return, he

claimed the overpayment of $61,151 that he had made for 1995 as a credit to his tax liability for taxable year 1996.  Section 6511(b)(2)(A) limits such a credit (or a refund) for 1995 to the tax paid for that year within the period, immediately preceding the filing of the claim for a credit in petitioner's 1995 return, equal to three years plus the period of any extension of time for filing that return.  See United States v. Brockamp, 519 U.S. 347, 351-354 (1997); Landry v. Commissioner, 116 T.C. ___ (2001) (slip op. at 6).  The due date for petitioner's 1995 return, including extensions, was August 15, 1996.  The $61,151 overpayment that petitioner made for his taxable year 1995 was made on April 15, 1996,[3] and not within the period prescribed by section 6511(b)(2)(A).  Consequently, petitioner is not entitled to a credit (or a refund) of that overpayment.  See sec. 6511(b)(2)(A); see also Landry v. Commissioner, supra.

Petitioner's inability to obtain a credit or a refund of his 1995 overpayment is self-imposed and is the result of the application of section 6511(b)(2)(A) to petitioner's conduct in choosing not to file his 1995 return until March 13, 2000.  For

---

[3]Any tax withheld from a taxpayer's wages is deemed paid by the taxpayer on the 15th day of the fourth month following the close of the taxable year with respect to which such tax is allowable as a credit under sec. 31.  See sec. 6513(b)(1).  Any amount paid as estimated income tax for any taxable year is deemed to have been paid on the last day for filing the return for such taxable year (determined without regard to any extensions of time for filing such return).  See sec. 6513(b)(2).

purposes of determining his entitlement to the protection of the Excessive Fines Clause of the Eighth Amendment, petitioner may not couple his inability to obtain a credit or a refund of his 1995 overpayment with any liability that he may have for 1996 for the additions to tax under section 6651(a)(1) and (2). See generally <u>Ianniello v. Commissioner</u>, 98 T.C. 165, 187 (1992).

We hold that the Eighth Amendment does not preclude imposition on petitioner of the additions to tax under section 6651(a)(1) and (2).

In further support of his position that he should not be liable for the additions to tax under section 6651(a)(1) and (2), petitioner argues in his opening brief that:

> Petitioner made the payments in question ($61,151) in 1995 over a year prior to the due date of the 1996 Form 1040. Thus, the $61,151 must be considered in calculating the §6651 penalty even though tax payer [sic] later forfeited his right to apply the payment due to his late filing of his 1996 [sic] Form 1040.

Petitioner elaborates in his answering brief on the foregoing argument, as follows:

> I.R.C. §6651(b) is the subsection which actually imposes the I.R.C. §§6651(a)(1) and (a)(2) penalties. It states that for purposes of calculating the penalties imposed by I.R.C. §6651(a)(1) and I.R.C. §6651(a)(2), "...the amount of tax required to be shown on the return shall be reduced by the amount of any tax which is paid on or before the date prescribed for payment of the tax...." Applying the plain and literal meaning of this statutory language requires the Internal Revenue Service in calculating any penalty under I.R.C. §6651 to reduce the 1996 tax by the taxes Ron Mason [petitioner] paid before April 15, 1997 which is the date prescribed for payment of the tax of the 1996

return.  I.R.C. §6651(b) does <u>not</u> state the tax shall be reduced by any payment of tax eventually claimed on the return as it does when I.R.C. §6651(b) addresses immediately after the above-quoted section the amount of any credit claimed on the return.

Accordingly, neither the Internal Revenue Service nor this Court may ignore the statutory language which states such tax payments by Ron Mason "shall" reduce the tax upon which the penalty is calculated.  Thus, Ron Mason's tax liability for 1996 must be reduced by the 1995 tax liability for 1996.  If there is no tax liability for 1996 then there is [sic] no additions to tax under I.R.C. §§6651(a)(1) and (a)(2). * * *

The short answer to the above-quoted argument of petitioner is that although petitioner overpaid his tax liability for 1995, he is barred by the statute of limitations from applying that overpayment as a credit to his tax liability for taxable year 1996, see sec. 6511(b)(2)(A), and the parties so stipulated.  The parties also stipulated that petitioner underpaid his tax for his taxable year 1996 in the amount of $40,882.69.

The long answer to petitioner's argument is that petitioner misconstrues section 6651(b).  Contrary to the contentions of petitioner, section 6651(b) is not "the subsection which actually imposes the I.R.C. §§6651(a)(1) and (a)(2) penalties."  As pertinent here, section 6651(b) states:

SEC. 6651.  FAILURE TO FILE TAX RETURN OR TO PAY TAX.

(b) Penalty Imposed on Net Amount Due.--For pur- poses of--

(1) subsection (a)(1), the amount of tax required to be shown on the return shall be reduced by the amount of any part of the tax which is paid on or before the date prescribed for payment of the tax and

by the amount of any credit against the tax which may
be claimed on the return,

    (2) subsection (a)(2), the amount of tax shown on
the return shall, for purposes of computing the addi-
tion for any month, be reduced by the amount of any
part of the tax which is paid on or before the begin-
ning of such month and by the amount of any credit
against the tax which may be claimed on the return,
* * *

As applied here, for purposes of section 6651(a)(1), the

amount of petitioner's tax for 1996 required to be shown in his

1996 return is to be reduced by the amount of any part of his tax

for 1996 which is paid on or before the date prescribed for the

payment of such tax (i.e., on or before April 15, 1997) and by

the amount of any credit against his 1996 tax to which he is

entitled and which may be claimed in his return for that year.

In the instant case, petitioner has conceded in the parties'

stipulation of facts (stipulations) that none of the $61,151

overpayment for 1995 may constitute a payment or a credit against

petitioner's underpayment of $40,882.69 for 1996.[4]  The only tax

---

[4]The pertinent stipulations of the parties are:

    8.  The petitioner did not file his 1995 Form 1040
until March 13, 2000.  In that return, petitioner
claimed an overpayment in the amount of $61,151.00,
which he elected to apply as a credit to his 1996 tax
year.  The parties stipulate that petitioner is barred
by the statute of limitations from applying that over-
payment to the taxable year 1996.

    9.  The parties stipulate that the petitioner has
underpaid his Federal income tax for the taxable year
1996 in the amount of $40,882.69.

of petitioner for 1996 paid on or before April 15, 1997 (the date prescribed for payment of his tax for that year) and the only credit against the 1996 tax which may be claimed by petitioner in his 1996 return are the prepayment withholding credits of $4,376 and the estimated tax payment credits in the amount of $587,491.31. Pursuant to section 6651(b)(1), only those amounts may reduce the amount of tax required to be shown in petitioner's 1996 return for purposes of section 6651(a)(1).

Similarly, as applied here, for purposes of section 6651(a)(2), the amount of petitioner's tax shown in petitioner's 1996 return is to be reduced, for purposes of computing the addition to tax under that section for any month, by the amount of any part of the tax for 1996 which is paid on or before the beginning of such month and by the total amount ($591,867.31) of the prepayment credits against petitioner's 1996 tax to which he is entitled and which may be claimed in his return for that year.

We hold that, for purposes of calculating the additions to tax under section 6651(a)(1) and (2), section 6651(b) does not permit petitioner to apply his 1995 overpayment of $61,151 as a credit against the tax required to be shown or shown, as the case may be, in his 1996 return.[5]

As a third ground in support of his position that he should

---

[5]However, in computing the additions to tax under sec. 6651(a)(1) and (2), the limitations and special rule of sec. 6651(c) apply.

not be liable for the additions to tax under section 6651(a)(1) and (2), petitioner contends that he had reasonable cause for failing to file timely his return for 1996 and failing to pay timely his tax liability for that year and that those failures were not due to willful neglect. According to petitioner, reasonable cause existed because:

> a. Petitioner personally prepared his federal income tax returns. He has no special education or training which would have reasonably led him to be aware of the tax law which disallowed the use of his 1995 tax overpayment.

> b. Petitioner had been severely penalized already by the loss of $102,033.00 [1995 overpayment of $61,151 for which he may not receive a refund or credit and 1996 underpayment of $40,882 which he must pay] which the Government has gained.

> c. The level of complexity of the issue resulting in the loss of Petitioner's 1995 tax overpayment is quite high as evidenced by, among other things, the split decision of the Supreme Court in Commissioner v. Lundy, 516 U.S. 235 (1996).

> d. Importantly, Petitioner should be given credit and awarded because he did pay his taxes timely albeit the application of certain tax laws prevent the use of $61,151.00 in 1996 of his 1995 tax overpayment. The Government did receive this money.

On the record before us, we find that petitioner has failed to satisfy his burden of showing that he had reasonable cause for failing to file timely his 1996 return and failing to pay timely his 1996 tax liability. Petitioner is well educated and an

experienced and successful businessman who was aware of his duties to file timely his returns and to pay timely any tax liability reflected in those returns.  Petitioner's inability to receive a refund or a credit of his 1995 overpayment resulted solely from his choice to file his 1995 return late on March 13, 2000.  See sec. 6511(b)(2)(A).  Contrary to the contention of petitioner, that late filing and the barring of a refund or a credit of his 1995 overpayment are not controlled by the holding in Commissioner v. Lundy, 516 U.S. 235 (1996).  Petitioner was granted an extension of time until August 15, 1996, within which to file his 1995 return.  He chose not to file that return until March 13, 2000.  Petitioner was barred from receiving a credit or a refund of his 1995 overpayment because he filed his return for 1995 on March 13, 2000.  See sec. 6511(b)(2)(A).

Moreover, the record establishes that petitioner made no effort to determine timely his tax obligations for the year 1996 and for the years 1993 through 1995 and 1997 through 1999. Although he was well aware of his duty to file timely his returns for those years and to pay timely any liability reflected in such returns, he did not file his returns for 1993 through 1997 until February and March 2000, and as of the date of the trial in this case he still had not filed his returns for 1998 and 1999. Petitioner's only explanation for these failures was that he was "too busy" and that he believed that he had paid any tax liabil-

ity that he owed for those years.

In support of his position under section 6651(a)(1) and (2), petitioner attempts to distinguish Ferguson v. Commissioner, T.C. Memo. 1994-114, and Knight v. Commissioner, T.C. Memo. 1984-376, from the instant case. We find the facts in those cases relating to the addition to tax under section 6651(a)(1) to be similar to the facts in the case before us. In Ferguson, the taxpayer contended that he failed to file timely his returns for the three years involved in that case "because he was busy working two jobs, because he believed the amount of his withholdings exceeded the amount he believed he owed, and because he believed that, under such circumstances, he would not be penalized for failure to timely file." Ferguson v. Commissioner, supra. We rejected those reasons as inadequate in Ferguson, and we reject them here. As we stated in Ferguson: "These excuses are not adequate to show reasonable cause for petitioner's failure to file timely returns for the years in issue."[6] Id.

In Knight v. Commissioner, T.C. Memo. 1984-376, the taxpayer did not file returns for three years. In explaining that fail-

---

[6]According to petitioner, an important distinction between Ferguson v. Commissioner, T.C. Memo. 1994-114, and the instant case is that in Ferguson the taxpayer "never paid the necessary taxes to the Government." We reject that distinction as factually inaccurate. Petitioner has not paid all of the tax that he owes for 1996, and he so conceded in the stipulations that he entered into with respondent when he stipulated that he has an underpayment for 1996 of $40,882.69.

ure, the taxpayer contended at trial that "his reasons for failing to file involved an unconfirmed belief that he did not owe any tax, the 'trauma' of all his problems and the fact that, unless someone was pressuring him to do something, he did not do it." Id. We held that those reasons did not constitute reasonable cause for failure to file the returns in question within the meaning of section 6651(a)(1). See id. We find the explanations offered by petitioner here for his failure to file timely his 1996 return and his failure to pay timely his 1996 tax liability to be similar to the excuses offered by the taxpayer in Knight. We rejected those excuses in Knight, and we reject those explanations here.

On the record before us, we find that petitioner's failure to file timely his return for 1996 and his failure to pay timely his tax liability for that year were not due to reasonable cause but were due to willful neglect.

On the record before us, we find that petitioner is liable for the additions to tax under section 6651(a)(1) and (2).

We have considered all of the contentions and arguments of petitioner that are not discussed herein, and we find them to be without merit and/or irrelevant.

To reflect the foregoing and the concessions of the parties,

Decision will be entered

under Rule 155.
