T.C. Summary Opinion 2005-183

UNITED STATES TAX COURT

JEFFREY THOMAS OLUP AND LOUISE MARIE OLUP, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7925-05S.                    Filed December 13, 2005.

Jeffrey Thomas Olup, pro se.

<u>Russell F. Kurdys</u>, for respondent.

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect when the petition was filed.[1]  The decision to be entered

---

[1] Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for 2002,
the taxable year in issue, and all Rule references are to the Tax
Court Rules of Practice and Procedure.  All monetary amounts are
rounded to the nearest dollar.

is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 2002 of $986. Hereinafter references to petitioners individually are to Mr. Olup or Mrs. Olup.

The sole issue for decision is whether petitioners are liable, under section 72(t), for the 10-percent additional tax on an early distribution from Mr. Olup's individual retirement account (IRA). We hold that they are.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

At the time that the petition was filed, petitioners resided in Monongahela, Pennsylvania.

In April 1995, Mr. Olup purchased a townhouse in Cecil Township, Pennsylvania. The townhouse was Mr. Olup's principal residence from April 1995 to April 2003. At all relevant times, Mr. Olup was the sole owner of this townhouse.

Petitioners met in January 2000.[2] At that time, Mrs. Olup had resided continuously with her parents in Monessen,

_____

[2] At that time, Mrs. Olup was 24 years old.

Pennsylvania, since high school.  Mrs. Olup has not been employed since 1998.

Petitioners were married on June 9, 2001.  After their marriage, Mrs. Olup moved into the townhouse with Mr. Olup.  In 2002, petitioners began looking for a primary marital residence closer to Mrs. Olup's family.

On June 13, 2002, petitioners purchased a lot at 231 Galbreath Drive, Monongahela, Pennsylvania 15063 (Galbreath home), and began construction of a single family residence.  Petitioners were listed as joint owners on the property's title as well as on the mortgage.  The Galbreath home was Mrs. Olup's first ownership interest in real estate.  Petitioners moved into the Galbreath home in April 2003.  Since then, petitioners have maintained the Galbreath home as their first marital residence.

In 2002, Mr. Olup withdrew $20,617 from his IRA.  He received the IRA distribution from Janus Mutual Funds.  The distribution proceeds were used to pay the acquisition costs for the Galbreath home.

Petitioners timely filed a Form 1040, U.S. Individual Income Tax Return, for 2002.  On line 15b of their return, petitioners reported the $20,617 distribution from Mr. Olup's IRA as taxable income.  Petitioners attached to their return, inter alia, Form 5329, Additional Taxes on Qualified Plans (Including IRAs) and Other Tax-Favored Accounts.  On the Form 5329, petitioners

claimed that $10,000 of the distribution was excluded from the additional tax on early distributions under exception No. 1 (IRA distributions made for purchase of a first home, up to $10,000). Petitioners then reported on their return $1,061 for the 10-percent additional tax computed on the remaining distribution of $10,617.

In the notice of deficiency, respondent determined that petitioners are liable for the 10-percent additional tax on the entire distribution under section 72(t) because Mr. Olup is not a first-time homebuyer.

Petitioners filed a timely petition with the Court. Paragraph 4 of the petition states in relevant part:

> Petitioners filed form 5329 and excepted $10,000 from the "additional tax" due to construction of our home. Petitioners argument is that the distributions were used in the acquisition of a principal residence and that the distributions were qualified first-time homebuyer distributions within the intent and meaning of section 72(t)(8).

## Discussion[3]

Generally, a distribution from an IRA is includable in the distributee's gross income in the year of distribution under the provisions of section 72. Secs. 61(a)(9), 408(d)(1), (3); see secs. 408(a), 4974(c)(4). Such distributions made prior to a

---

[3] We decide the issue in this case without regard to the burden of proof because the facts are not in dispute and the issue is legal in nature. See generally sec. 7491(a); Rule 142(a); Higbee v. Commissioner, 116 T.C. 438 (2001).

taxpayer's attaining the age of 59-1/2 that are includable in income are generally subject to a 10-percent early withdrawal tax unless an exception to the tax applies. Sec. 72(t)(1).

As relevant herein, section 72(t)(2)(F) exempts distributions from the early withdrawal tax to the extent such distributions are qualified first-time homebuyer distributions. See sec. 72(t)(2)(F), (8). The maximum amount of a distribution that may be treated as a qualified first-time homebuyer distribution is $10,000. Sec. 72(t)(8)(B). Any amount of a distribution that petitioners received in excess of $10,000 remains subject to the 10-percent additional tax required by section 72(t). Id.

A qualified first-time homebuyer distribution is defined in section 72(t)(8)(A) as:

> (A) In general. -- * * * any payment or distribution received by an individual to the extent such payment or distribution is used by the individual * * * to pay qualified acquisition costs with respect to a principal residence of a first-time homebuyer who is such individual, the spouse of such individual, or any child, grandchild, or ancestor of such individual or the individual's spouse.

As relevant herein, a first-time homebuyer means any individual "if such individual (and if married, such individual's spouse) had no present ownership interest in a principal residence during the 2-year period ending on the date of acquisition of the principal residence". Sec. 72(t)(8)(D)(i)(I).

The date of acquisition is the date on which construction of a principal residence is commenced.  Sec. 72(t)(8)(D)(iii)(II).

Petitioners contend that they qualify as first-time homebuyers within the intent and meaning of section 72(t)(8). Petitioners argue that Congress intended the statute to be liberally construed such that in the case of a married couple, the first-time homebuyer exception analysis must consider whether the "marital unit" is a first-time homebuyer of its first "marital residence".  It follows, in petitioners' view, that they qualify as first-time homebuyers as a marital unit because the Galbreath home is their first marital residence under section 72(t)(8).  We disagree.

In interpreting a statute, we look first to the language of the statute, and we look only to legislative history to learn the purpose of the statutory language or to resolve ambiguities in the statutory language.  Consumer Prod. Safety Commn. v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980).  If the language of a statute is plain, clear, and unambiguous, the statutory language is to be applied according to its terms unless a literal interpretation of the statutory language would lead to absurd results.  Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997); Consumer Prod. Safety Commn. v. GTE Sylvania, Inc., supra; United States v. Am. Trucking Associations, 310 U.S. 534, 543-544 (1940); Allen v. Commissioner, 118 T.C. 1, 7 (2002).  A court,

however, may depart from the plain language of the statute only by an extraordinary showing of a contrary congressional intent in the legislative history.  Garcia v. United States, 469 U.S. 70, 75 (1984).

Petitioners' argument overlooks the plain language of section 72(t)(8)(D).  Section 72(t)(8)(D)(i) refers to a first-time homebuyer in the singular form as any individual.  It further provides that, in the context of an individual that is married, such individual's spouse also must satisfy the first-time homebuyer test as an individual.  It follows therefrom that the language of section 72(t)(8)(D)(i) requires that both owners of the property must individually satisfy the first-time homebuyer test.  In other words, each individual homebuyer in a marital unit must have had no prior ownership interest in a principal residence.  The legislative history of section 72(t)(8)(D) further supports this interpretation.  According to the House and Senate reports: "The bill requires that the spouse of the individual also meet this requirement as of the date the contract is entered into or construction commences."  S. Rept. 105-33, at 30-31 (1997), 1997-4 C.B. (Vol. 2) 1067, 1110; H. Conf. Rept. 105-220, at 381 (1997), 1997-4 C.B. (Vol. 2) 1457, 1851; H. Rept. 105-148, at 338 (1997), 1997-4 C.B. (Vol. 1) 319, 660.

Further, to broadly construe the statute such that the term "principal residence" encompasses a "first-time marital residence" extends beyond the plain meaning of the statute. There is no reference in the statutory language or in the legislative history indicating that Congress intended a different analysis for a married couple purchasing their first marital residence where one spouse has had an ownership interest in a prior principal residence and the other spouse has not had an ownership interest in a prior principal residence. If Congress had intended to create a separate analysis for the marital unit purchasing its first marital residence, it could have easily done so explicitly in section 72(t)(8)(D).

Petitioners ask the Court to construe the statute equitably in their favor. We decline to do so. Although we acknowledge that petitioners used Mr. Olup's IRA distribution for laudable purposes, we must apply the law as Congress enacted it, absent some constitutional defect, and we may not rewrite it. See Commissioner v. Lundy, 516 U.S. 235, 252 (1996).

Petitioners do not dispute that Mr. Olup individually is not a qualified first-time homebuyer under section 72(t)(8)(D). Therefore, we conclude that $20,617 of Mr. Olup's IRA distribution is subject to the additional tax under section 72(t). Accordingly, we sustain respondent's determination.

We have considered all of the other arguments made by petitioners, and, to the extent that we have not specifically addressed them, we conclude that they are without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect our disposition of the disputed issues,

<u>Decision will be entered</u>

<u>for respondent.</u>