T.C. Memo. 2008-103

UNITED STATES TAX COURT

RICHARD A. PERKINS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14587-06L.          Filed April 16, 2008.

Richard A. Perkins, pro se.

<u>Christopher J. Sheldon</u>, for respondent.

MEMORANDUM OPINION

JACOBS, <u>Judge</u>:  The petition in this case was filed in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination).[1]  Pursuant to section 6330(d), petitioner seeks

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended.

our review of respondent's determination to collect by levy unpaid additions to tax and interest with respect to petitioner's income taxes for tax years 1995 and 2000.

## Background

Petitioner resided in Arizona at the time he filed his petition. Petitioner and his wife untimely filed joint returns[2] for tax years 1995 and 2000 on which they reported taxes of $4,219 and $5,892, respectively. Respondent assessed the tax shown on each return. As of November 15, 2004, the date respondent issued a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing (final notice of intent to levy), for tax years 1995 and 2000, the unpaid balance of petitioner's tax liability (after taking into account withholding credits, payments, additions to tax, and interest) was $361.49 for tax year 1995 and $1,262.18 for tax year 2000.[3]

Petitioner filed a joint tax return for 1999 on February 26, 2004.[4] The 1999 return showed, and respondent does not dispute,

---

[2]Nothing in the record suggests that petitioner's wife has sought relief from joint liability for any taxes due. See sec. 6013(d)(3).

[3]Petitioner filed his 1995 return on Dec. 1, 2003, and his 2000 return on Mar. 4, 2004. It appears that all unpaid balances for both tax years are attributable to interest and additions to tax. No notice of deficiency was issued with respect to such additions to tax.

[4]Petitioner did not request an extension of time to file his 1999 return.

that petitioner overpaid his 1999 tax liability by $1,922.  All
petitioner's 1999 tax payments were made through withholding
credits.

Shortly after he filed his 1999 return, petitioner requested
that respondent apply the 1999 overpayment to his tax liabilities
for 1995 and 2000.  Petitioner discussed this proposal by
telephone with five different IRS representatives.[5]  Thereafter,
on May 6, 2004, petitioner wrote respondent stating that he had
been advised to write a letter "explaining the issues along with
pertinent documentation."  The issue that petitioner referred to
concerned the application of the 1999 overpayment to offset the
penalty and additions to tax and interest for 2000.  Petitioner
wrote:  "I am not disputing the penalty & interest amount owed
($1224.38) for tax period 2000."  Rather, petitioner stated that
he sought to avoid application of the period of limitations with
respect to claims for credit or refund for tax year 1999.  In
this regard, petitioner wrote:  "We moved 6 times (along with
boxing packing and storage involved) between 1999 and when we
found and filed our tax documents (02/22/2004) for 1999."  No
other description of the circumstances surrounding the claim for

[5]One such representative was the Appeals officer who
ultimately, in June of 2006, recommended disallowance of
petitioner's claim concerning his 1999 overpayment.

credit or refund was offered in the May 6, 2004, letter, and no documents were attached to the letter. Petitioner addressed the letter to respondent's office in Holtsville, New York.

Because petitioner failed to pay the balances of assessed amounts for 1995 and 2000, respondent determined that enforced collection action would be required. In response to respondent's final notice of intent to levy for tax years 1995 and 2000, on or about November 19, 2004, petitioner requested a hearing under section 6330.[6]

To his request for a section 6330 hearing petitioner affixed a note stating: "I am not disputing the penalty & interest amounts owed for tax period 1995 ($345.83) & 2000 ($1,224.38). I am respectfully requesting that the IRS apply the overpayment ($1,992.00) for tax period 1999 to satisfy the amount owed for tax period 1995 & 2000."[7] The section 6330 hearing was scheduled for September 21, 2005, in Phoenix, Arizona.

In the months preceding the scheduled hearing, respondent's settlement officer attempted to resolve petitioner's case. The settlement officer reviewed the Internal Revenue Manual (IRM) in evaluating petitioner's claim that his 1999 overpayment should be

---

[6]Petitioner's wife ratified petitioner's request for a sec. 6330 hearing on Sept. 7, 2005.

[7]The amounts petitioner represented as owed do not include the entire amount of interest that had accumulated on the underpayments as of the date of the final notice of intent to levy.

applied to amounts owed from 1995 and 2000. IRM part 21.4.1.4.9.4(1) and (3) (October 1, 2003), which the settlement officer consulted, provided,[8] in relevant part, that "claims for credit or refund of prepaid credits are required to be filed within 3 years from the return due date or extended due date" but that "RRA 98 allows the taxpayer to file for a claim after the statute expiration date if the taxpayer was physically or mentally disabled in financial matters. These cases must be referred to the Statute Unit for a determination." IRM part 21.4.4.3.1(1), which the settlement officer also consulted, provides: "the RSED [Refund Statute Expiration date] is generally 3 years from the Return Due Date (RDD) for prepaid credits if a return was filed".

During a telephone conversation on March 21, 2005, petitioner asked the settlement officer whether there were exceptions to the rules regarding the period of limitations applicable to claims for credit or refund. The settlement officer advised petitioner that a medical disability causing him to be unable to handle his financial matters would be one such exception. Petitioner was advised that such a disability would have to be verified by a statement from petitioner's physician. Petitioner mentioned that he had in fact been diagnosed with

---

[8]As discussed infra note 14, this portion of the IRM, which was in effect as of Oct. 1, 2003, has since been revised.

mental illness. The settlement officer specified that the disability "had to be for the years in question" to which petitioner responded that he did indeed have the disability "back then."

It is apparent that both petitioner and respondent's agents perceived a linkage between respondent's proceeding with enforced collection action for 1995 and 2000 and petitioner's entitlement to a refund or credit for the 1999 overpayment. Both parties believed (erroneously, as explained infra) that petitioner's claim for credit or refund was not timely. Furthermore, both parties believed (also erroneously, as explained infra) that an untimely claim for credit or refund might nevertheless be permissible depending on petitioner's physical or mental condition as to his financial affairs at the time the 1999 return, and possibly the 1995 return and the 2000 return, was due, as opposed to a later period; i.e., between February 26, 2001, and February 26, 2004.

Following the March 21, 2005, telephone conversation with petitioner, the settlement officer in Phoenix, Arizona, wrote to respondent's Statute Unit in Ogden, Utah (Statute Unit), to inquire whether it possible to apply petitioner's 1999 overpayment to his unpaid taxes for 1995 and 2000. On August 30, 2005, the settlement officer was informed by an examiner for the Statute Unit that petitioner's credit or refund claim had been

disallowed and that petitioner had already been advised of this decision in a letter dated August 29, 2005.

In a letter dated September 8, 2005, an account manager in respondent's Statute Unit informed petitioner:

> Although we sympathize with your reasons for filing your return late, the law does not allow reasonable cause for filing your return more 3 years [sic] late. Internal Revenue Code 6511 states you must file your return within 3 years of when you were required to file in order to receive a refund or to have your overpayment applied to another year.

At the section 6330 hearing in Phoenix, Arizona, on September 21, 2005, the settlement officer described to petitioner the attempts she had made to accommodate his request concerning his 1999 credit or refund claim. Petitioner responded that he had been informed by a settlement officer in Fresno, California, that under special circumstances, "refunds can be pulled out of excess collections". The settlement officer explained that this avenue had already been explored and that petitioner's claim had been rejected because he had not provided sufficient information. At that point, petitioner reiterated that he had been treated for mental illness and provided additional information and documentation in support of his claim.

In the light of this new information and documentation, the settlement officer decided to recommend that the Statute Unit reconsider petitioner's request concerning his 1999 credit or refund claim. The settlement officer's recommendation, made on

or about September 21, 2005 (immediately following the section 6330 hearing), cited a provision of the IRM which "allows a taxpayer to file a claim after the statute expiration date if the taxpayer was physically or mentally disabled in financial matters."[9]  The settlement officer attached to her recommendation two supporting documents that petitioner had provided.  The settlement officer's letter closed with the following paragraph:

> Please review this information and advise me if you can reconsider this taxpayer's claim for a refund offset.  If additional information is required, please call the taxpayer and request the necessary documentation.  He is cooperative.

One of the two supporting documents described the services provided to petitioner by Saint Vincent Hospital Primary Care Network on four separate occasions between April 19 and June 11, 2002.  These services consisted of an initial visit with a therapist followed by a psychiatric interview on May 3, 2002, one session of psychotherapy on May 28, 2002, and one session of individual therapy on June 11, 2002.  The other supporting document was a copy of a lab work order form reflecting petitioner's office visit to Dr. Rupa Kneip on November 30, 2003, and noting petitioner's symptoms of anxiety and depression.

Before the Statute Unit responded to the settlement officer's request for reconsideration, the Field Director of

---

[9]The cited IRM provision, pt. 25.6 (May 17, 2004), contains a detailed description of the substantiation requirements in support of a claim of financial disability.

respondent's accounts management office in Holtsville, New York (Holtsville office), responded to petitioner's claim for credit or refund in a letter dated February 1, 2006. That letter informed petitioner that his claim was not allowed because "to claim that overpayment as a credit or to obtain a refund, you have to file your tax return within 3 years from its due date." The letter explained that if petitioner could show that he was financially disabled, he might qualify for relief "from the time limitations for filing a claim set by law." Petitioner was advised that he could appeal the Holtsville office's denial of his claim, and that the Holtsville office would consider petitioner's explanation before forwarding petitioner's request to respondent's Office of Appeals (which, the letter noted, is separate from the Holtsville office).

On February 17, 2006, the Statute Unit notified petitioner that it had forwarded the request for reconsideration to the Ogden, Utah, Office of Appeals, but that the request had been returned to it because a specific request from petitioner (rather than from the settlement officer) was required. The letter stated: "If you feel the financial disability criteria is applicable you will need to specifically request an appeal on that basis." Petitioner replied in writing: "Please consider this letter a specific request from me to consider a

reinstatement of refund for Tax Period Dec. 31, 1999 for a reasonable cause for filing late (exception - illness)."

Petitioner, on March 3, 2006, submitted all of the correspondence he had received from respondent's various offices to the settlement officer in Phoenix, Arizona.  The settlement officer's notes indicate:  "It appears both Brookhaven and Ogden are working the same issue and giving [the taxpayer] conflicting information."  In a conversation with a representative at the Ogden, Utah, office, on the same day, the settlement officer was told that "the communication lines really broke down on this."

Respondent's Phoenix Office of Appeals ultimately denied petitioner's claim concerning his 1999 overpayment.  The Appeals team manager's letter of disallowance, dated June 8, 2006, states that petitioner's claim was denied because "you did not file your 1999 return within 3 years of its due date, and you could not show that you were financially disabled on the due date."  The case notes of the Appeals officer assigned to evaluate petitioner's claim for credit or refund reflect a conversation, on February 6, 2006,[10] between petitioner and the Appeals officer and contain the note:  "I spoke w/ Richard Perkins.  He was

---

[10]It appears that petitioner also spoke to the same Appeals officer when he first inquired, in May of 2004, about the possibility of applying the 1999 overpayment to his 1995 and 2000 taxes.  See supra note 5.

treated for mental illness in 2003. He was not financially disabled on 4/15/2000. Nor could he show why [petitioner's spouse] couldn't file the 1999 return timely."

On June 29, 2006, respondent issued a notice of determination sustaining the proposed levy, signed by the same Appeals team manager who had sustained the denial of petitioner's claim concerning his 1999 overpayment. The notice of determination reiterates that the Appeals officer who denied the claim concerning the 1999 overpayment "decided that the taxpayer was not treated for mental illness until 2003 and he could not show why his spouse couldn't have filed the 1999 return timely." No other basis for the denial of petitioner's claim concerning the 1999 overpayment is articulated in the Appeals officer's notes or in the notice of determination.

Petitioner timely petitioned this Court for review of respondent's determination. In his petition, petitioner requests abatement of penalties and interest for 2000, and refund of the overpayment for 1999. The petition reiterates that petitioner moved six times between 1999 and 2004, that petitioner asked respondent to apply his 1999 overpayment to his 1995 and 2000 taxes, and that petitioner had been diagnosed and treated for depression, anxiety, and other mental illness during 2002 through 2003.

At trial petitioner introduced additional evidence pertaining to his claim of mental disability, consisting of notes

compiled by a therapist and a psychiatrist at Saint Vincent Behavioral Health Clinic.  The notes contain detailed descriptions of petitioner's mental health difficulties, and reflect a diagnosis of bipolar disorder and depression.  The notes describe the medication that was prescribed to treat these conditions and petitioner's progress and setbacks as he used the medication.  Petitioner had not submitted these medical records to respondent before trial because he was embarrassed by their contents and believed that the documents he had already submitted were sufficient substantiation of his claim that he had been financially disabled.  Petitioner testified that he had also been treated by another psychiatrist from whom he had never requested substantiating documentation.

## Discussion

Section 6331(a) authorizes the Secretary to levy upon property and property rights of a taxpayer liable for taxes who fails to pay those taxes within 10 days after notice and demand for payment.  Section 6331(d) provides that the levy authorized in section 6331(a) may be made with respect to any unpaid tax only after the Secretary has notified the person in writing of his intention to make the levy at least 30 days before any levy action is begun.  Section 6330 elaborates on section 6331 and provides that upon a timely request a taxpayer is entitled to a collection hearing before the IRS Office of Appeals.  Sec. 6330(a)(3)(B), (b)(1).  A request for a collection hearing must

be made within the 30-day period commencing on the day after the date of the section 6330 notice. Sec. 6330(a)(3)(B); sec. 301.6330-1(b)(1), Proced. & Admin. Regs.

If a section 6330 hearing is requested, the hearing is to be conducted by the Office of Appeals, and, at the hearing, the Appeals officer conducting it must verify that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(b)(1), (c)(1). The taxpayer may raise at the hearing "any relevant issue relating to the unpaid tax or the proposed levy". Sec. 6330(c)(2)(A).

At the conclusion of the hearing, the Appeals officer must determine whether and how to proceed with collection and take into account: (i) The relevant issues raised by the taxpayer, (ii) challenges to the underlying tax liability by the taxpayer, where permitted, and (iii) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that the collection action be no more intrusive than necessary. Sec. 6330(c)(3).

Within 30 days after the Office of Appeals issues a notice of determination, the taxpayer may appeal the determination to the Tax Court if we have jurisdiction over the underlying tax liability, sec. 6330(d)(1), as we do in the instant case.[11] Our

---

[11]We note that the Pension Protection Act of 2006, Pub. L. 109-280, sec. 855(a) and (b), 120 Stat. 1019, amended sec. 6330(d)(1) to provide that for determinations made after Oct. 16,
(continued...)

review will be de novo where the underlying tax liability is at issue. <u>Sego v. Commissioner</u>, 114 T.C. 604, 610 (2000). For purposes of these provisions, "underlying tax liability" includes additions to tax. <u>Katz v. Commissioner</u>, 115 T.C. 329, 339 (2000). Where the underlying tax liability is not at issue, we review the Commissioner's determination for abuse of discretion. <u>Goza v. Commissioner</u>, 114 T.C. 176, 181 (2000). An abuse of discretion is defined as any action that is unreasonable, arbitrary or capricious, clearly unlawful, or lacking sound basis in law, taking into account all the facts and circumstances. See, e.g., <u>Thor Power Tool Co. v. Commissioner</u>, 439 U.S. 522, 532-533 (1979). If infected by an error of law, the determination of the Appeals officer may be set aside irrespective of the standard of review. <u>Swanson v. Commissioner</u>, 121 T.C. 111 (2003).

As discussed <u>infra</u>, the outcome in this case is not affected by the standard of review or by whether we consider the evidence petitioner submitted at trial, consisting of notes compiled by a therapist and a psychiatrist pertaining to petitioner's mental health, or petitioner's testimony that he was also treated by another psychiatrist from whom he had not requested substantiating documentation.

---

[11](...continued)
2006, the Tax Court has jurisdiction to review the Commissioner's collection activity regardless of the type of underlying tax involved.

In this proceeding, petitioner seeks abatement of the section 6651(a)(1) addition to tax for late filing, the section 6651(a)(2) addition to tax for failure to pay the tax when due, and the 6654 addition to tax for failure to pay estimated taxes, all pertaining to tax year 2000. We construe petitioner's position in this regard to be that he should not be held liable for the additions to tax for 2000.[12]

Section 301.6330-1(f)(2), A-F5, Proced. & Admin Regs., provides that in seeking Tax Court review of a notice of determination, the taxpayer can ask the Court to consider only an issue that was raised in the taxpayer's section 6330 hearing. See Giamelli v. Commissioner, 129 T.C. 107, 113 (2007); Magana v. Commissioner, 118 T.C. 488, 493 (2002). Petitioner did not dispute his liability for the underlying tax for either 1995 or 2000; indeed, he conceded his liability for the underlying tax in his correspondence of May of 2004 (with respect to 2000), and again in his November 2004 request for a section 6330 hearing (with respect to both 1995 and 2000). Therefore, we cannot consider petitioner's liability for the underlying tax for either 1995 or 2000 even though raised in the petition.

---

[12]We recognize that we do not have jurisdiction, in this collection review proceeding, to order a refund or credit of taxes paid. Greene-Thapedi v. Commissioner, 126 T.C. 1 (2006). But we are not foreclosed from considering whether petitioner has paid more than was owed in determining whether the proposed levy collection action may proceed. Id. at 11 n.19.

In evaluating respondent's determination, we have jurisdiction to consider the taxpayer's tax liabilities for years that were not the subject of the notice of determination insofar as they are relevant to computing the taxpayer's tax liability for years that are the subject of the notice of determination. Freije v. Commissioner, 125 T.C. 14, 27 (2005). Indeed, in this case, respondent, in sustaining the proposed levy to collect taxes for tax years 1995 and 2000 (and throughout the development of petitioner's case), considered petitioner's claim that he was financially disabled in 1999 (so that his 1999 overpayment, otherwise barred by the period of limitations, was available to pay the 1995 and 2000 liabilities), and it is respondent's determination that we review.[13] See sec. 6330(d)(1)(A).

Section 6511(a) provides:

SEC. 6511. LIMITATIONS ON CREDIT OR REFUND.

(a) Period of Limitation on Filing Claim.--Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such period expires the later * * *

---

[13]In addition, petitioner's claim that his 1999 overpayment was available to extinguish his 1995 and 2000 liabilities may be fairly construed as proposing a collection alternative, an issue that is expressly contemplated by sec. 6330(c)(2)(A)(iii) as appropriate in a sec. 6330 hearing. Respondent does not dispute that petitioner overpaid his 1999 tax.

Petitioner's 1999 return, filed February 26, 2004, constituted his claim for credit or refund.  Thus, the 3-year period of section 6511(a) was met although, as discussed infra, the 2-year period of section 6511(a) was not.  See Commissioner v. Lundy, 516 U.S. 235 (1996).[14]

Section 6511(b)(2)(A) provides:

SEC. 6511.  LIMITATIONS ON CREDIT OR REFUND.

(b) Limitation on Allowance of Credits and Refunds.--

\* \* \* \* \* \* \*

(2) Limit on amount of credit or refund.--

(A) Limit where claim filed within 3-year period.--If the claim was filed by the taxpayer during the 3-year period prescribed in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return. \* \* \*

Therefore, the amount of 1999 tax overpayment petitioner can obtain as a credit or refund cannot exceed the portion of the tax which he paid for tax year 1999 within the 3 years preceding

---

[14]Part of the reason that respondent's agents consistently reached the conclusion that petitioner's claim for credit or refund was not timely is the language of the then-current IRM pt. 21.4.1.4.9.4 (1) and (2), which, as described supra, stated that claims for credit or refund of prepaid credits are required to be filed within 3 years from the return due date.  The same IRM part was revised as of Oct. 1, 2006, to state, consistently with sec. 6511(a), that claims for credit or refund are required to be filed within 3 years from the time the return was filed, or two years from the time the tax was paid, whichever is later.

February 26, 2004, the date his claim for credit or refund was filed; i.e., 1999 tax payments made after February 26, 2001 and before February 26, 2004.

All of petitioner's 1999 tax was paid through wage withholdings, which, under section 6513(b)(1), are deemed to have been paid "on the 15th day of the fourth month following the close of his taxable year with respect to which such tax is allowable as a credit under section 31", i.e.; on April 15, 2000. Therefore, unless an exception applies, none of petitioner's 1999 tax overpayment is subject to credit or refund because the tax was deemed paid more than 3 years before the claim for credit or refund was filed. Petitioner fails to satisfy the provisions of section 6511(b)(2)(A) by approximately 10 months and 11 days.

Section 6511(h)(1) provides that the running of the period specified in section 6511(b) shall be suspended during any period of an individual's life in which the individual is financially disabled. See Brosi v. Commissioner, 120 T.C. 5 (2003). Section 6511(h)(2) provides:

SEC. 6511. LIMITATIONS ON CREDIT OR REFUND.

(h) Running of Periods of Limitation Suspended While Taxpayer Is Unable to Manage Financial Affairs Due to Disability.--

* * * * * * *

(2) Financially disabled.--

(A) In general.--* * * [A]n individual is financially disabled if such individual is unable to manage his financial affairs by reason of a

medically determinable physical or mental impairment of the individual which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  An individual shall not be considered to have such an impairment unless proof of the existence thereof is furnished in such form and manner as the Secretary may require.

(B) Exception where individual has guardian, etc.--An individual shall not be treated as financially disabled during any period that such individual's spouse or any other person is authorized to act on behalf of such individual in financial matters.

As directed by section 6511(h), the Commissioner has prescribed guidelines that are to be used in deciding whether a taxpayer is financially disabled.  According to Rev. Proc. 99-21, sec. 4, 1999-1 C.B. 960, 960, the taxpayer must provide a physician's written statement that includes:  (1) The name and description of the taxpayer's physical or mental impairment, (2) the physician's medical opinion that the impairment prevented the taxpayer from managing his financial affairs, (3) the physician's medical opinion that the impairment was or can be expected to result in death, or lasted or can be expected to last for 12 months or more, and (4) the specific time period during which the taxpayer was prevented by such physical or mental impairment from managing the taxpayer's financial affairs.[15]  The physician's

---

[15]Additionally, the taxpayer must certify that no person, including the taxpayer's spouse was authorized to act on behalf of the taxpayer in financial matters during the relevant period.

statements must be submitted with the credit or refund claim. Id.

Respondent's denial of petitioner's claim for relief from the period of limitations of section 6511(b)(2)(A) was based on the supposition that petitioner was not treated for mental illness (and did not suffer from mental illness) until 2003, rather than at the time the return was due. Not only was this supposition incorrect, because petitioner was in fact treated for mental illness beginning in April of 2002 (and had submitted substantiation of this fact), but it is an insufficient basis, as a matter of law, upon which to deny petitioner relief from the period of limitations of section 6511(b)(2)(A).

Section 6511(h) suspends the period of limitations set forth in section 6511(b)(2)(A) during any period of an individual's life in which he is financially disabled. Whether petitioner filed his 1999 return within 3 years of the date the return was due, whether petitioner was financially disabled on the date the return was due, and whether petitioner's spouse could have filed a timely return might all be relevant to an inquiry as to whether petitioner is liable for additions to tax for failure to timely file a return and/or to pay the tax when due, see sec. 6651(a), but none of these considerations sufficiently addresses the relevant issues encompassed by section 6511(h).[16] Respondent's

---

[16]Respondent has not attempted to demonstrate, nor is there
(continued...)

Appeals officer should have ascertained: (1) Whether and for how long petitioner was financially disabled at any time between February 26, 2001, and February 26, 2004,[17] and; (2) whether petitioner's financial disability, if any, suspended the period of limitations under section 6511(b)(2)(A) for a sufficient amount of time to enable petitioner to obtain a credit or refund for taxes paid on April 15, 2000.[18]

At trial respondent contended that petitioner did not present satisfactory evidence of his treatment for mental illness as prescribed by the Secretary in Rev. Proc. 99-21, 1999-1 C.B. 960. However, this lack of substantiation did not appear to play any role in respondent's Appeals officer's decision to deny petitioner's claim concerning his 1999 overpayment. There is no evidence that respondent's Appeals officer, in denying

---

[16](...continued) evidence, that petitioner, if financially disabled, was not entitled to the suspension of the period of limitations due to operation of the exception found in sec. 6511(h)(2)(B).

[17]Even if, as respondent supposed, petitioner's claim for credit or refund had not fallen within the 3-year period of sec. 6511(a), proper application of sec. 6511(h) might have provided relief from that period of limitations as well. See sec. 6511(h)(1).

[18]We note that IRM pt. 25.6.6.8.1(6) (May 17, 2004) provides that an individual with a mental impairment who consults with a psychiatrist automatically has proof that the impairment continued for the entire period of consultation. The documentation petitioner submitted to the settlement officer established that he had consulted a psychiatrist as early as May 5, 2002, and was still seeking professional help for anxiety and depression as late as Nov. 20, 2003.

petitioner's claim that his 1999 overpayment should be applied to 1995 and 2000, ever inquired as to whether the requirements of Rev. Proc. 99-21, supra, had been met or advised petitioner of the existence of Rev. Proc. 99-21, supra, in order to permit petitioner to comply with its provisions.

It is possible that petitioner would have been able to produce the physician's attestation and otherwise comply with the provisions of Rev. Proc. 99-21, supra, to show that he was financially disabled. Respondent's Appeals officer apparently did not consider this possibility because he misapprehended the applicable law (i.e., the Appeals officer believed that petitioner's financial disability would have to have existed on April 15, 2000, when the 1999 return was due and that petitioner, in order to obtain a credit or refund for 1999, was required to file the return within 3 years of the date the return was due or show reasonable cause why the return was not timely filed).

The Appeals officer's verification that the requirements of applicable law had been met was incorrect. Accordingly, respondent's proposed enforcement action to collect by levy the 1995 and 2000 assessments may not proceed.

We shall remand the determination for 1995 and 2000 to respondent's Office of Appeals for reconsideration of petitioner's claim that he was financially disabled within the meaning of section 6511(h), so that his overpayment of tax for 1999 should have been applied to offset his 1995 and 2000 tax

liabilities.[19]  We express no opinion as to whether petitioner was financially disabled within the meaning of section 6511(h) and if so, the effect on petitioner's entitlement to an offset of his 1999 overpayment against his 1995 and 2000 tax liabilities.

To reflect the foregoing,

<u>An appropriate order</u>

<u>will be issued</u>.

---

[19]In the course of his reconsideration, respondent might wish to consider whether petitioner had reasonable cause for his failure to file timely returns for 1995 and 2000 and whether the assessment of an addition to tax under sec. 6654(a) for 2000 was appropriate.