T.C. Summary Opinion 2016-45

UNITED STATES TAX COURT

KEVIN A. PECK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 29144-13S.                    Filed August 22, 2016.

Kevin A. Peck, pro se.

<u>Adam W. Dayton</u> and <u>Ric D. Hulshoff</u>, for respondent.

SUMMARY OPINION

GUY, <u>Special Trial Judge</u>: This case was heard pursuant to the provisions

of section 7463 in effect when the petition was filed.[1] Pursuant to section 7463(b),

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code, as amended and in effect at all relevant times. All monetary
amounts are rounded to the nearest dollar.

the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent issued petitioner a statutory notice of deficiency for the taxable year 2009. Petitioner filed a timely petition for redetermination with the Court pursuant to section 6213(a). At the time the petition was filed, petitioner resided outside of the United States.

Respondent concedes that petitioner is not liable for the deficiency or the additions to tax determined in the notice of deficiency. Although the parties agree that petitioner overpaid his Federal income tax for 2009, they disagree in the first instance as to whether the Court has jurisdiction to award petitioner a refund. In this regard, the primary issue for decision is whether petitioner was "financially disabled" within the meaning of section 6511(h) so that the running of the period of limitations governing claims for refund was suspended and is not a bar to the Court's jurisdiction. If we conclude that the Court has jurisdiction to award a refund, we must determine the amount of petitioner's overpayment--a question that turns on whether he is entitled to a deduction for charitable contributions in excess of the amount respondent allowed.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference.

## I. Petitioner's Background

### A. Military Service

Petitioner has had a long career in the U.S. Army (Army) and has been stationed at numerous military installations in the United States and overseas. After initially enlisting in 1988, petitioner left the Army to attend Shippensburg University, where he earned a bachelor's degree. He resumed his career with the Army as an officer in 1995.

Between 1995 and 2002 petitioner was stationed at Fort Campbell, on the Kentucky-Tennessee border, and later at a military base near San Antonio, Texas. Petitioner was stationed in Iraq in 2003.

In 2004 the Army selected petitioner to pursue graduate studies at Baylor University where he earned two master's degrees, one in science information systems and the other in healthcare administration.

In 2007 petitioner returned to Iraq for 10 months. After that tour of duty petitioner made a brief stop at Fort Belvoir, Virginia, followed by a deployment to Seoul, South Korea, from 2008 to 2011. Petitioner was responsible for managing

medical information technology systems for the Army's healthcare system in South Korea.

While stationed in South Korea petitioner moved multiple times. He explained that paying rent in South Korea was not a simple matter. To pay his rent, he first made a cash withdrawal at the bank (in U.S. dollars), converted the dollars to local currency, and then delivered the cash to his landlord.

B. Rental Properties

In 1998 and 2000 petitioner purchased residences in Clarksville, Tennessee, and San Antonio, Texas, respectively. He later converted the residences into rental properties. Petitioner hired a management company to take care of the Tennessee property and, with the help of neighbors, he managed the San Antonio property.

C. Charitable Contributions

Petitioner attended a local church while he was stationed in South Korea. Although he made cash contributions to the church and participated in charitable events, he was unable to produce records or any written acknowledgment of his cash contributions, nor did he retain records related to his participation in charitable events.

D.  Petitioner's Injuries

In the late 1990s petitioner was injured at the Joint Rangers Training School at Fort Campbell.  Petitioner also suffered significant injuries while he was deployed in Iraq.  As discussed below, at the time of trial petitioner continued to receive medical treatment for some of his service-related injuries.

II.  Delinquent Tax Returns

Because of his frequent overseas deployments, petitioner did not always receive his mail timely, and he was delinquent in filing his Federal income tax returns.  In late 2009, at the recommendation of friends, petitioner hired Letha Rupert, a certified public accountant in Las Vegas, Nevada, to prepare his tax returns for 2007 through 2010.  Although petitioner provided Ms. Rupert with all of the documents that he believed were necessary to prepare and file his tax returns, he lost contact with her in 2011.[2]

In October 2012 an Army legal assistance attorney wrote to Ms. Rupert and informed her that petitioner had been contacted by the Internal Revenue Service (IRS) about his delinquent tax returns and urged her to contact petitioner to assist in resolving the matter.

[2]It appears that sometime in 2011 Ms. Rupert was seriously injured as the result of a physical assault.

On July 8, 2013, the IRS sent a letter to petitioner (and sent a copy to Ms. Rupert) stating that, because he had not filed a Federal income tax return for 2009, the IRS had prepared a substitute for return in accordance with the provisions of section 6020(b).

On July 24, 2013, petitioner sent an email to Ms. Rupert referring to payments that he had remitted to the IRS in respect of his tax liability for 2008 and his receipt of "another assessment for the 2010 tax year".

III. Notice of Deficiency and Petition for Redetermination

On September 9, 2013, respondent issued to petitioner a notice of deficiency (and sent a copy to Ms. Rupert) determining a deficiency of $15,526 in his Federal income tax for 2009 and additions to tax under section 6651(a)(1) and (2). On December 13, 2013, petitioner (with Ms. Rupert's assistance) filed a timely petition for redetermination with the Court challenging the notice.

IV. Postpetition Developments

Ms. Rupert passed away suddenly in May 2014. In the meantime petitioner received a letter from the IRS Office of Appeals inviting him to discuss his case with the aim of arriving at a basis for settlement. In June 2014 petitioner submitted to the IRS a Form 1040, U.S. Individual Income Tax Return, for 2009, claiming that he was due a refund on an overpayment of $6,438. He attached to

the tax return a Schedule A, Itemized Deductions, claiming in relevant part a deduction of $23,665 for charitable contributions, including $17,041 in cash that he had purportedly contributed to the church he attended in South Korea. With the exception of the $17,041 of charitable cash contributions, the IRS accepted petitioner's tax return as submitted and concluded that he had an overpayment of $1,838 for 2009.

On September 15, 2014, petitioner wrote to the IRS and requested a refund for 2009. Petitioner's letter states in pertinent part:

> 1. I am asking that my credited tax return funds for 2009 be released from the Excess Collections Department and then paid out to me as I was deployed to Iraq during 2007 and forward deployed to a Hazardous Duty Armistice zone from AUG 2008-AUG 2011. Followed by an assignment in HI from 2011-2013.
>
> 2. Due to the continued deployments, address changes, and overseas assignments I was experiencing considerable challenges in collecting my tax documents in order to accurately file. As such, in late 2010 I secured a former senior IRS agent to act on my behalf while I was deployed who began to build my file, submit the appropriate extensions, etc. Unfortunately, however, she did not file my taxes as she passed away from a massive heart attack prior to completing them. After extensive efforts on my part and the assistance of the Army's Judge Advocate General I was able to secure my tax files and file my taxes upon returning to the Continental US in 2014.
>
> 3. In light of my back-to-back deployments and the unusual extenuating circumstances with my account please grant my account an exception for the tax year 2009.

By letter dated October 21, 2014, the IRS informed petitioner that his refund claim was denied because it was untimely.

Petitioner subsequently submitted to the IRS a letter signed by Dr. Edward L. Baldwin, Jr., dated November 19, 2014. The letter describes in general terms petitioner's service-related injuries following his deployments to Iraq and states that petitioner's medical evaluations began in 2008, that he had been under Dr. Baldwin's care since October 7, 2014, and that he was expected to remain in treatment over the next year. Dr. Baldwin's letter does not speak to petitioner's ability to manage his personal financial affairs.

## Discussion

The Court's jurisdiction to determine an overpayment of tax and to order the refund of that overpayment is prescribed in section 6512. In the case of a deficiency proceeding initiated by a taxpayer under section 6213(a), if the Court determines that there is no deficiency and further finds that the taxpayer has made an overpayment of income tax for the same taxable period, the Court is vested with jurisdiction under section 6512(b)(1) to determine the amount of the overpayment; and when the Court's decision becomes final, the taxpayer is entitled to a credit or refund in the amount of the overpayment.

Section 6512(b)(3)(B), however, restricts the amount of any refund that the Court may allow to the portion of any tax that was paid "within the period which would be applicable under section 6511(b)(2), (c), or (d), if on the date of the mailing of the notice of deficiency a claim had been filed (whether or not filed)". In sum, section 6512 incorporates "the look-back provisions from * * * [section] 6511(b)(2), and directs the Tax Court to determine the applicable period by inquiring into the timeliness of a hypothetical claim for refund filed 'on the date of the mailing of the notice of deficiency'." Commissioner v. Lundy, 516 U.S. 235, 241-242 (1996) (quoting section 6512(b)(3)(B)).

There is no dispute that no portion of petitioner's overpayment was paid within the applicable lookback period. Where (as here) the taxpayer has not filed a tax return as of the date the IRS mails a notice of deficiency and the notice of deficiency is mailed more than three years after the tax constituting the overpayment was paid, the Tax Court normally lacks jurisdiction to determine an

overpayment.[3] See Brosi v. Commissioner, 120 T.C. 5, 8-10 (2003); Haller v.

Commissioner, T.C. Memo. 2010-147.

Petitioner relies, however, on a narrow exception to the general rules

governing the timeliness of refund claims. Specifically, petitioner asserts that he

was "financially disabled" within the meaning of section 6511(h), and, therefore,

the normal period for seeking a refund for 2009 was suspended. Section 6511(h)

provides in relevant part as follows:

> SEC. 6511(h). Running of Periods of Limitation Suspended
> While Taxpayer Is Unable to Manage Financial Affairs Due to
> Disability.--
>
> (1) In general.--In the case of an individual, the running
> of the periods specified in subsections (a), (b), and (c) shall be
> suspended during any period of such individual's life that such
> individual is financially disabled.
>
> (2) Financially disabled.--
>
> (A) In general.--For purposes of paragraph (1), an
> individual is financially disabled if such individual is

---

[3]Petitioner's overpayment is attributable to tax withheld from his wages (and remitted to the Department of the Treasury) for 2009. For purposes of sec. 6511, petitioner is deemed to have paid that tax on April 15, 2010. See sec. 6513(b)(1). The notice of deficiency was mailed to petitioner on September 9, 2013--more than three years after petitioner's tax was deemed to have been paid. There is no indication that petitioner requested or was granted any extension of time to file his tax return for 2009. Finally, the tax in question was not paid during the two-year period before the notice of deficiency was mailed on September 9, 2013. See, e.g., Haller v. Commissioner, T.C. Memo. 2010-147.

unable to manage his financial affairs by reason of a medically determinable physical or mental impairment of the individual which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. An individual shall not be considered to have such an impairment unless proof of the existence thereof is furnished in such form and manner as the Secretary may require.

(B) Exception where individual has guardian, etc.--An individual shall not be treated as financially disabled during any period that such individual's spouse or any other person is authorized to act on behalf of such individual in financial matters.

The Secretary has delineated the form and manner of proof necessary for a taxpayer to establish a qualifying physical or mental impairment under section 6511(h). See Rev. Proc. 99-21, 1999-1 C.B. 960. Specifically, a taxpayer must present a physician's written statement setting forth: (1) a description of the taxpayer's physical or mental impairment; (2) the physician's medical opinion that the taxpayer's physical or mental impairment prevented him from managing his financial affairs; (3) the physician's medical opinion that the impairment was or could be expected to result in death or lasted (or could be expected to last) for a continuous period of not less than 12 months; and (4) the specific period during which the taxpayer was prevented by such physical or mental impairment from

managing his financial affairs.  Id. sec. 4(1), 1999-1 C.B. at 960; see Brosi v.

Commissioner, 120 T.C. at 11.[4]

As previously mentioned, the record includes a written statement from

Dr. Baldwin, petitioner's treating physician at the time of trial.  Dr. Baldwin's

letter describes in general terms petitioner's service-related injuries and states that

his medical evaluations began in 2008, that he had been under Dr. Baldwin's care

since October 7, 2014, and that he was expected to remain in treatment over the

next year.  Dr. Baldwin's letter does not speak to petitioner's ability to manage his

personal financial affairs.

The Court is certainly sympathetic to petitioner's situation.  The record

reflects that although he took reasonable steps to prepare and file his 2009 tax

return in time to claim a refund, circumstances (including his deployment to South

Korea and Ms. Rupert's difficulties) conspired against him.  Unfortunately, we are

unable to conclude that he qualifies for the specific relief prescribed in section

6511(h).

Although we have no doubt that petitioner's injuries may have been a factor

in his decision to hire Ms. Rupert, we conclude, after considering all the facts and

---

[4]We note that there is no evidence that any person was authorized to act on petitioner's behalf in financial matters during the period in question.  See Rev. Proc. 99-21, sec. 4(2), 1999-1 C.B. 960, 960.

circumstances, that petitioner was not financially disabled during the period in question. Petitioner testified that he was capable of managing one of his rental properties and overseeing the management of another. The record also indicates that petitioner was able to pay his bills and manage financial transactions such as paying his rent while he was stationed in South Korea. Finally, Dr. Baldwin did not offer an opinion that petitioner's condition prevented him from managing his personal financial affairs.

In sum, we conclude that the Court lacks jurisdiction under section 6512(b) to determine an overpayment for the taxable year 2009. Consequently, the question whether petitioner is entitled to a deduction for charitable contributions in excess of the amount respondent allowed is moot.

To reflect the foregoing,

<u>An appropriate decision will be entered</u>.